```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
                                                    x
UNITED STATES OF AMERICA,                           :
                                                    :
        Plaintiff,                                  :
                                                    :
        v.                                          :
                                                    :
MOSHE LAX, individually, as an executor of the      :
the Chaim Lax Estate, as a trustee of the Chaim     :
Lax Family Trust, and as a trustee of the GAMA      :
Trust; ZLATY SCHWARTZ, individually, as             :       No. 1:18-cv-04061
executor of the Chaim Lax Estate, as trustee of the :
Chaim Lax Family Trust, and as a trustee of the     :
GAMA Trust; SHAINDY LAX; JUDITH LAX;                :
J.L., a minor; 299 HEWES STREET REALTY              :
CORP; 307 HEWES STREET REALTY CORP;                 :
JBAM REALTY LLC, a/k/a JBAM REALTY 2                :
LLC; BEN ZION JACOBOWITZ; TONY                      :
JACOBOWITZ; SL HOLDINGS I, LLC;                     :
SL HOLDINGS II, LLC; SL HOLDINGS III, LLC;          :
SL HOLDINGS IV, LLC; SL HOLDINGS V, LLC;            :
DIAMOND DYNAMICS LLC; KGK JEWELRY                   :
LLC; CONGREGATION BAIS YEHUDAH                      :
D'GANITCH; and LX HOLDINGS LLC,                     :
                                                    :
        Defendants.                                 :
                                                    x
```

**Memorandum of Law in Opposition to Shaindy Lax's Motion to Dismiss**

The United States filed a complaint that seeks to collect millions of dollars in income and estate taxes of Chaim Lax, including recovering millions in assets that Chaim sought to hide through fraudulent conveyances. Defendant Shaindy Lax ("Shaindy"), while acknowledging that the complaint is well-pleaded, asserts that it fails to state a cause of action against her for fraudulent transfer. Shaindy does not dispute that the transfers at issue were fraudulent, but argues that because she received the property as the nominee or alter ego of her husband, she is not a transferee and thus cannot be held liable for her role in the fraud. The law does not permit her to escape liability so easily. The complaint sets forth more than sufficient facts to establish

1

that Shaindy is both a transferee and beneficiary of the fraudulent transfers in question, and accordingly under New York law she can be held liable for money damages in the event that rescission is not an adequate remedy. The motion should be denied.

**Background**[1]

Chaim Lax, deceased, was a diamond wholesaler and real estate developer who, through numerous business entities, owned real estate throughout Brooklyn, New York. During an audit that would result in the IRS assessing him with more than $32 million in income tax liabilities, Chaim was diagnosed with stomach cancer. Two years later, Chaim died, leaving those income taxes unpaid, along with an estate that was later determined to owe millions more in estate tax. As of April 25, 2018, Chaim's estate (the "Estate") owes $61,559,044.81 in federal estate and income tax liabilities.

Moshe Lax ("Moshe"), one of the two executors of the Estate, is Chaim's son and the successor to the Lax family business empire. Both before and after Chaim's death, Moshe engaged in a series of transactions designed to place Chaim's property beyond the reach of the Estate's creditors, including the IRS. One way that he did this was to place ownership over many of the Estate's assets in the name of his wife, Shaindy, often using an alias for her to further obscure the ownership of the assets.

Three such transactions are at issue on this motion.[2] The first involved Dynamic Diamond Corp. ("Dynamic Diamond"), one of several companies through which Chaim operated

---

[1] The facts in this section are drawn from the complaint. The facts pleaded in the complaint are deemed true for purposes of this motion. *See Doe v. Columbia University*, 83 F.3d 46, 48 (2d Cir. 2016).

[2] In her motion, Shaindy states that she is only alleged to be a participant in the fraudulent transfers described in Counts VII and VIII of the complaint. However, Count X also alleges Shaindy's participation in a fraudulent transfer, as further discussed herein.

his business wholesaling high-end, loose diamonds during his life. Before Chaim's death, Dynamic Diamond operated in New York City's diamond district, grossing up to $150 million per year. Following Chaim's death, Moshe, together with his sister and co-executor Zlaty Schwartz ("Zlaty"), changed Dynamic Diamond's name to White Coat Inc. and then, days later, filed an Assignment for the Benefit of Creditors under the new company name, in a fraudulent attempt to strip away its creditors' claims. They then quickly changed the company's name again, to Diamond Dynamic LLC ("Diamond Dynamic"), and placed nominal ownership in the hands of Shaindy, the result of which was to appropriate the corporation's assets while evading its creditors.

The second transaction involved Madison Avenue Diamonds LLC ("Madison Avenue Diamonds"), a retail jewelry business that Chaim and Moshe owned and operated jointly during Chaim's life. Chaim's accountant valued Madison Avenue Diamonds at $42,685,652 only seven months before his death; however, after Chaim's death, Moshe and Zlaty transferred Madison Avenue Diamonds for no consideration to an entity they established called SL Holdings I LLC, at a time when the Estate was insolvent. Shaindy, using the name Chana Weisz, was the sole owner and member of SL Holdings I LLC.

The third involved more than $40,000,000 in real estate assets that Chaim had fraudulently transferred to the Chaim Lax Family Trust during his life. After Chaim's death, Moshe and Zlaty transferred these assets from the Chaim Lax Family Trust to SL Holdings I and a series of other LLCs: SL Holdings II LLC, SL Holdings III LLC, SL Holdings IV, LLC, and SL Holdings V LLC (together, the "SL Holdings Companies"). Like SL Holdings I, Shaindy owns the other SL Holdings Companies under the name Chana Weisz, allowing Moshe to exercise control over them. Moshe and Zlaty attempted to create the appearance of consideration

for these transfers by engineering a sham loan transaction between SL Holdings I and another entity under their control, which had the effect of creating a fictitious $3,000,000 debt from the Chaim Lax Family Trust to SL Holdings I to justify the transfer of assets.

Further details of these complex transactions are provided in the United States' complaint and motion for temporary restraining order. However, given that Shaindy concedes that the complaint states causes of action for fraudulent transfer generally, and that the Court has already determined that the United States is likely to prevail on the merits of its claims (Dkt. No. 8), it is not necessary to recite further factual background here.

In the complaint, the United States seeks to unwind these three transfers, or if rescission provides an inadequate remedy, seeks a money judgment for the full amount of the transferred assets against Moshe, Zlaty, and Shaindy, jointly and severally, as participants in the fraudulent conveyances who were transferees and beneficiaries of the conveyance. In her motion, Shaindy asserts that she is not a transferee because her ownership over the assets at issue was merely nominal, and thus she cannot be held liable for the fraudulent transfers. The facts as pleaded, however, are more than sufficient to demonstrate Shaindy's liability as a transferee or beneficiary of these fraudulent transfers under New York law.

## Argument

### I. New York Fraudulent Transfer Law

The transfers at issue were fraudulent, and thus avoidable, under New York's Debtor and Creditor Law ("DCL"). Under the DCL, a conveyance can be actually or constructively fraudulent. A conveyance made "with actual intent . . . to hinder, delay, or defraud either present or future creditors" is actually fraudulent as to both present and future creditors. DCL § 276. A conveyance is constructively fraudulent if it is made without fair consideration and the transferor

4

is insolvent or will be rendered insolvent by the transfer in question, among other things. *See* DCL §§ 273-275; *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005). The United States has asserted both kinds of fraud in this case.

A creditor who establishes that a transfer was fraudulent is entitled to have the transfer set aside. *See, e.g.*, *Manufacturers & Traders Tr. Co. v. Lauer's Furniture Acquisition, Inc.*, 226 A.D.2d 1056, 1057, 641 N.Y.S.2d 947, 948–49 (1996); DCL § 279. However, "when the traditional fraudulent conveyance remedy of rescission is no longer practicable," such as "where the asset alleged to have been fraudulently transferred is no longer in the hands of the original transferee" or otherwise no longer exists, then a money judgment may be entered in an amount up to the value of the fraudulently transferred assets. *In re Adelphia Recovery Tr.*, 634 F.3d 678, 692-93 (2d Cir. 2011) (citing cases). "[A] creditor may recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance." *RTC Mortg. Tr. 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201–02 (S.D.N.Y. 2001) (citing *Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1172 (2d Cir. 1993)).

Importantly, "one need *only* be a transferee or beneficiary to be a participant in a fraudulent transfer; not either a transferee or beneficiary of a fraudulent conveyance *and* a participant in the underlying fraud." *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-cv-4971, 2011 WL 9933496, at *11 (E.D.N.Y. Aug. 5, 2011) (emphasis in original). In other words, an individual who either receives the fraudulently transferred assets or benefits from the fraudulent transfer is liable. Transferees and beneficiaries do not "escape liability for money damages for the amounts transferred just because they were only transferees or beneficiaries and played no other role in the fraudulent transfers." *Id.*

## II. The Complaint States a Claim That Shaindy Lax Is a Transferee and a Beneficiary of Fraudulent Transfers

The complaint demonstrates that Shaindy was a transferee and a beneficiary of the three fraudulent conveyances at issue. She was the record owner of five different corporations that received tens of millions of dollars in assets in fraudulent transfers. That control of the corporations and the assets remained in Moshe's hands does not make her less of a participant. She provided the appearance of an ownership change to permit her husband to shield assets from collection by the IRS and other creditors, while substantively retaining control of those assets. Yet while Shaindy may have allowed Moshe to manage the entities she nominally owned, she still served as a transferee. That is, she, too, exercised "dominion or control" over the assets. *Fed. Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 842, 552 N.E.2d 158 (1990). She conducted business on behalf of both the SL Companies and Diamond Dynamic, using her alias, Chana Weisz, to obscure her husband's relationship to these entities. *See* Compl. ¶¶ 76; 112. For example, she signed corporate documents using that alias, including the documents transferring Chaim's real estate assets from the Chaim Lax Family Trust to SL Holdings I. *See id*. at ¶¶ 88, 204. Additionally, as sole shareholder and owner, she was free to dispose of the corporate assets as she pleased.

Moreover, Shaindy benefitted from the fraud. As a formal matter, the value of her stock holdings increased dramatically by virtue of her entities receiving tens of millions of dollars in assets through fraudulent transfers. As a practical matter, the result of the schemes set out in the complaint was to transfer tens of millions of dollars in assets from the Estate to Moshe personally, without paying Chaim's tax liabilities. Shaindy benefitted from this too as Moshe's wife. *See Integrity Elecs., Inc. v. Garden State Distributors, Inc.*, 14-cv-3197, 2016 WL 3637004, at *10 (E.D.N.Y. June 30, 2016) (finding that "although not the individual to make the

transfers," the transferor's wife "was a transferee and beneficiary of the transfer when it was deposited into the bank account she shared with [her husband], and then used by [a corporation] in which she is a co-owner, to purchase . . . property."). The fact that Shaindy, as she notes in her motion, is a homemaker who relies entirely on Moshe for her income, only further supports the conclusion that the assets he appropriated from the Estate benefitted her directly. She need not have affirmatively sought out those benefits to be a beneficiary.

This is not a case involving an unwitting participant in a fraud who did not actually receive any benefits. In *Stochastic Decisions v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993), a RICO case involving a web of fraudulent transfers not unlike the ones in this case, the court dismissed claims against a corporation that served as mortgagee on a loan that was used to facilitate one of the fraudulent transactions. Discovery revealed that mortgage had been issued to the defendant without its knowledge and it had not received any of the assets in question. The Second Circuit found that the RICO claims against the defendant were properly dismissed, because it was not a knowing participant in the fraud. *Stochastic Decisions,* 995 F.2d at 1169. By contrast, in this case Shaindy does not even claim to have been an unwitting participant in the fraud, and even if she did, that would not be sufficient to prevail on a motion to dismiss; at most it would create a disputed issue of fact. The facts as pleaded support a conclusion that Shaindy knew that she was playing a role in the fraud her husband orchestrated and accepted the benefits of the fraud. The case is thus more similar to *Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 609 (S.D.N.Y. 2018), in which the court found the transferor's wife complicit in her husband's fraudulent conveyances, in part on the basis that she knew he had financial problems and took steps to put their joint assets in her name alone. Placing nominal ownership of an asset in the hands of a spouse or relative while maintaining control over the asset is a common tactic for

defrauding creditors, which is why New York law views intra-family transfers with particular skepticism and shifts the burden of proving the fairness of the consideration to the transferee in such cases. *See, e.g.*, *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971, 2011 WL 9933496, at *9 (E.D.N.Y. Aug. 5, 2011).

Finally, Shaindy incorrectly asserts that she cannot be held liable for a money judgment unless the United States prevails on a claim to pierce the corporate veil of the SL Holdings Companies. Although the United States submits that it has stated more than sufficient facts to pierce the corporate veil, this argument misapprehends the relief sought. The United States asserts that Shaindy is both a transferee and a beneficiary of at least three fraudulent transfers, and seeks a money judgment against her in her personal capacity under New York's fraudulent transfer laws. The Court need not disregard the corporate form of the SL Holdings Companies in order to grant that relief. *See RTC Mortg. Tr. 1995-S/N1*, 171 F. Supp. 2d at 202 (holding corporation's sole shareholder liable as a beneficiary of a fraudulent transfer made to his entity, despite creditor's inability to state a veil-piercing claim).

"[A] debtor may not avoid payment of its debts to a creditor by setting in motion a chain of conveyances through related entities and family members." *Integrity Elecs., Inc. v. Garden State Distributors, Inc.*, No. 14-cv-3197, 2016 WL 3637004, at *10 (E.D.N.Y. June 30, 2016). That is precisely what Moshe and Shaindy attempted here. Dismissing the claims against Shaindy would render any future money judgment meaningless, given the Laxes' history of placing Estate and other valuable assets in her name.

## **Conclusion**

For the foregoing reasons, the motion to dismiss should be denied.

                          Respectfully submitted,

                          RICHARD E. ZUCKERMAN
                          Principal Deputy Assistant Attorney General

                          _____
                          STEPHANIE WEINER CHERNOFF
                          STEVEN S. TENNYSON
                          PINGPING ZHANG
                          Trial Attorneys, Tax Division
                          U.S. Department of Justice
                          P.O. Box 55
                          Washington, D.C.  20044
                          202-307-2251 (v)
                          202-514-5238 (f)
                          Stephanie.W.Chernoff@usdoj.gov
                          Steven.Tennyson@usdoj.gov
                          Pingping.Zhang@usdoj.gov

CERTIFICATE OF SERVICE

   I hereby certify that on this 1st day of May, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification to all parties that have entered an appearance.

                 */s/ Stephanie Weiner Chernoff*
                  STEPHANIE WEINER CHERNOFF
                  Trial Attorney
                  U.S. Department of Justice, Tax Division