UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————x

UNITED STATES OF AMERICA,                           :
                                                    :
            *Plaintiff,*                            :
                                                    :
      *v.*                                           :          No. 1:18-cv-04061-ILG-PK
                                                    :
                                                    :          Dist. Judge I. Leo Glasser
MOSHE LAX, individually, as an executor of          :
the Chaim Lax Estate, as a trustee of the Chaim     :          Mag. Judge Peggy Kuo
Lax Family Trust, and as a trustee of the GAMA      :
Trust; ZLATY SCHWARTZ, individually, as             :
executor of the Chaim Lax Estate, as trustee of the :
Chaim Lax Family Trust, and as a trustee of the     :
GAMA Trust; SHAINDY LAX; JUDITH LAX;                :
J.L., a minor; 299 HEWES STREET REALTY              :
CORP; 307 HEWES STREET REALTY CORP;                 :
JBAM REALTY LLC, a/k/a JBAM REALTY 2                :
LLC; BEN ZION JACOBOWITZ; TOBY                      :
JACOBOWITZ; SL HOLDINGS I, LLC;                     :
SL HOLDINGS II, LLC; SL HOLDINGS III, LLC;          :
SL HOLDINGS IV, LLC; SL HOLDINGS V, LLC;            :
DIAMOND DYNAMICS LLC; KGK JEWELRY                   :
LLC; CONGREGATION BAIS YEHUDAH                      :
D'GANITCH; LX HOLDINGS LLC;                         :
MORRIS SCHLAGER; GITTY SCHLAGER;                    :
JOSEPH GREEN; HANNAH GREEN;                         :
HENNY GREEN; and HERSHI GREEN,                      :
                                                    :
            *Defendants.*                            :

———————————————————————x


**PLAINTIFF UNITED STATES' MEMORANDUM OF LAW REGARDING PROPOSED
ADDITIONAL QUESTIONS FOR FINKELSTEIN & VIRGA DEPOSITION**

        The Plaintiff United States of America, pursuant to the Court's minute order entered on

April 17, 2021, submits this memorandum of law regarding proposed additional questions for the

continued deposition of Finkelstein & Virga, P.C. ("F&V").  As explained below, the Plaintiff

United States' remaining deposition questions, as amended, either do not implicate the attorney-

client privilege or they seek communications for which the attorney-client privilege has been

properly waived.

## BACKGROUND FACTS

On April 15, 2021, the United States began taking the deposition of F&V.  During the deposition, in response to certain questions from the United States and out of an abundance of caution, F&V counsel raised the attorney-client privilege on behalf of Defendant Moshe Lax ("Lax"), one of the co-executors of the Estate of Chaim Lax, who was not present.  Counsel for the other co-executor, Zlaty Schwartz ("Schwartz"), was present and raised similar attorney-client privilege objections.  However, Schwartz's counsel stated at the deposition that, due to his client's advice of counsel defense, his client is waiving attorney-client privilege with respect to 1) preparation of the Form 706 estate tax return for the Estate, and 2) the decedent's transaction involving a self-cancelling installment note ("SCIN").[1]  Although the deposition was able to continue with respect to several subject areas, counsel for the United States, Schwartz, and F&V agreed to keep the deposition open so that the parties could ask the Court for guidance on how to proceed with the United States' remaining questions which may implicate the attorney-client privilege, in light of Lax's absence.

On April 16, 2021, the Court held a status conference in the case, at which the undersigned government counsel explained what had occurred at the F&V deposition the previous day.  The Court ordered Lax to appear for the continued F&V deposition and all future depositions of attorneys who provided him legal advice over which he intends to assert any privileges.  The Court also ordered the United States to draft a list of proposed remaining F&V deposition questions and circulate them to Lax and counsel for Schwartz and F&V by April 21, 2021.  The Court also ordered the United States and Schwartz to file by April 26, 2021,

---

[1] Furthermore, in Schwartz's Second Amended Answer to the Amended Complaint, she has asserted an "advice of counsel" defense with respect to Chaim Lax's federal income tax liabilities.  *See* Docket No. 122, at p. 42.

memorandums of law explaining why the United States' proposed deposition questions do not invoke the attorney-client privilege.

On April 20, 2021, the undersigned government counsel emailed to Lax and counsel for Schwartz and F&V the United States' list of proposed of proposed remaining F&V deposition questions, which were as follows:

1.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves, of either Executor objecting to serving as an executor of the Estate?

   a.     If so, please describe when they objected, the basis for their objection, and how it was resolved.

2.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves, of any conflicts between the two co-executors regarding Estate-related matters?

      a.     If so, please describe the conflict, when it occurred, and how it was resolved.

3.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves, of either Executor refusing to sign a document?

      a.     If so, please describe the circumstances in which such refusal occurred, when it occurred, and the document involved.

4.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves, of any dispute between the two co-executors regarding which estate-related expenses to pay?

      a.     If so, please describe the dispute, when it occurred, and how it was resolved.

5.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves, of any dispute between the two co-executors regarding how to distribute estate assets?

      a.     If so, please describe the dispute, when it occurred, and how it was resolved.

6.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves, of either Executor claiming that Estate-related information was being withheld from them?

     a.     If so, please describe the circumstances in which such claim occurred, when it occurred, and who the allegation was made against.

7.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves, of either Executor claiming that his or her signature was forged on any document?

     a.     If so, please describe the circumstances in which such claim occurred, the sources involved, and who the allegation was made against.

8.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves, of either Executor being aware of Chaim Lax having outstanding federal income tax liabilities?

     a.     If so, please describe how the Executors became aware, and when they became aware.

9.     Did Finkelstein & Virga ever communicate with Zlaty Schwartz regarding the preparation of the Form 706 federal estate tax return for the Estate of Chaim Lax?

     a.     If so, please describe the substance of the communication, the method of communication (i.e., in-person meeting, writing, or telephone), and when the communication took place.

10.     Did Finkelstein & Virga ever communicate with Moshe Lax regarding the preparation of the Form 706 federal estate tax return for the Estate of Chaim Lax?

     a.     If so, please describe the specific substance of the communication, the method of communication (i.e., in-person meeting, writing, or telephone), and when the communication took place.

11.     Did Finkelstein & Virga ever communicate with Zlaty Schwartz regarding the transaction in which Chaim Lax transferred his ownership interest in LX Holdings, LLC, to the Chaim Lax Family Trust in exchange for a self-cancelling installment note ("SCIN")?

     a.     If so, please describe the specific substance of the communication, the method of communication (i.e., in-person meeting, writing, or telephone), and when the communication took place.

12.     Did Finkelstein & Virga ever communicate with Zlaty Schwartz regarding Chaim Lax's federal income tax liabilities?

a.      If so, please describe the specific substance of the communication, the method of communication (i.e., in-person meeting, writing, or telephone), and when the communication took place.

13.     Did Finkelstein & Virga ever communicate with Zlaty Schwartz regarding the Estate's litigation with the IRS in U.S. Tax Court regarding Chaim Lax's federal income tax liabilities?

a.      If so, please describe the specific substance of the communication, the method of communication (i.e., in-person meeting, writing, or telephone), and when the communication took place.

In response to the United States' proposed list of additional deposition questions, Schwartz's counsel informed the undersigned government counsel that his client would not be invoking the attorney-client privilege as to any of the proposed questions.

However, Lax objected to the proposed questions, on two grounds:  1) regarding questions 1-8, conversations between F&V and other counsel for the co-executors should be excluded based on the attorney-client privilege, and 2) regarding questions 9 and 11-13, Schwartz as a co-executor may not unilaterally waive attorney-client privilege regarding communications with counsel for the Estate.  The United States addresses each objection below.

## ARGUMENT

**A.      The United States Has Modified Questions 1-8 to Exclude Communications Between F&V and Other Counsel for the Co-Executors.  Thus, the Attorney-Client Privilege Is Not Implicated.**

In response to Lax's objection to Questions 1-8, the United States has modified these questions to exclude communications between F&V and other counsel for the co-executors, Lax and Schwartz, due to the extension of the attorney-client privilege to communications between co-counsel.  *See Johnson v. J. Walter Thompson U.S.A.,* LLC, 2017 WL 3432301, at *4 (S.D.N.Y. Aug. 9, 2017); *Sudarsky v. City of New* York, 1900 WL 193964, at *2 (S.D.N.Y. Nov.

28, 1990); *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 47 F.R.D. 334, 339 (S.D.N.Y. 1969).

Therefore, the United States has modified Questions 1-8 to the following (with changes underlined):

1.      Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves <u>or through communications with any other attorney for the Executors</u>, of either Executor objecting to serving as an executor of the Estate?

a.      If so, please describe when they objected, the basis for their objection, and how it was resolved.

2.      Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves <u>or through communications with any other attorney for the Executors</u>, of any conflicts between the two co-executors regarding Estate-related matters?

a.      If so, please describe the conflict, when it occurred, and how it was resolved.

3.      Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves <u>or through communications with any other attorney for the Executors</u>, of either Executor refusing to sign a document?

a.      If so, please describe the circumstances in which such refusal occurred, when it occurred, and the document involved.

4.      Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves <u>or through communications with any other attorney for the Executors</u>, of any dispute between the two co-executors regarding which estate-related expenses to pay?

a.      If so, please describe the dispute, when it occurred, and how it was resolved.

5.      Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves <u>or through communications with any other attorney for the Executors</u>, of any dispute between the two co-executors regarding how to distribute estate assets?

a.      If so, please describe the dispute, when it occurred, and how it was resolved.

6.      Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves <u>or through communications with any other attorney for the</u>

Executors, of either Executor claiming that Estate-related information was being withheld from them?

        a.     If so, please describe the circumstances in which such claim occurred, when it occurred, and who the allegation was made against.

        7.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves <u>or through communications with any other attorney for the Executors</u>, of either Executor claiming that his or her signature was forged on any document?

        a.     If so, please describe the circumstances in which such claim occurred, the sources involved or through communications with any other attorney of the Executors, and who the allegation was made against.

        8.     Did Finkelstein & Virga ever become aware, other than through communications with the Executors themselves <u>or through communications with any other attorney for the Executors</u>, of either Executor being aware of Chaim Lax having outstanding federal income tax liabilities?

        a.     If so, please describe how the Executors became aware, and when they became aware.

        With these changes, Questions 1-8 do not implicate the attorney-client privilege.

    **B.**    **The Attorney-Client Privilege Does Not Extend to Communications Regarding an Attorney's Preparation of a Federal Tax Return.**

        Questions 9 and 10 concern communications between F&V and each co-executor, respectively, regarding preparation of the Form 706 federal estate tax return.

        Communications between client and attorney regarding attorney's preparation of a federal tax return are not shielded by the attorney-client privilege. *See Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983); *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981); *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973); *Canaday v. United States*, 354 F.2d 849, 857(8th Cir. 1966). Therefore, Questions 9 and 10 do not implicate the attorney-client privilege.

        In addition, with respect to Question 9, as explained below, Schwartz may waive attorney-client privilege with respect to communications she solely had with F&V.

**C.      Schwartz May Waive Attorney-Client Privilege Regarding Communications She Solely Had with F&V, Over the Objection of Co-Executor Lax.**

When two clients are represented by the same attorney, one of the clients may waive the attorney-client privilege to the extent of that client's own communications with the joint attorney.  *See Restatement (Third) of the Law Governing Lawyers* § 75 (2000); *In re Teleglobe Communications Corp.*, 493 F.3d 345, 363 (3rd Cir. 2007) (citing Third Restatement); *cf. United States v. Agnello*, 135 F. Supp. 2d 380, 383 (E.D.N.Y. 2001) ("A client who is part of a joint defense arrangement is entitled to waive the privilege for his own statements, and his co-defendants cannot preclude him from doing so."); *In re Grand Jury Subpoena*, 274 F.3d 563, 572 (1st Cir. 2001) ("Even when [common interest] rule applies, however, a party always remains free to disclose his own communications."); *MapleWood Partners, L.P., v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 605-06 (S.D. Fla. 2013) ("One member of a joint defense group cannot waive the privilege that attached to the information shared by another member of the group without the consent of that member, but any defendant could, of course, testify as to her own statements at any time.").

Specifically, the Third Restatement states that "(1) If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged under §§ 68-72 and related to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, *unless it has been waived by the client who made the communication.*"  *Id.* (emphasis added).  The Comments to the Third Restatement provide additional support for this proposition:

> The normal rules of waiver (see §§ 78- 80) apply to a co-client's own communications to the common lawyer. Thus, in the absence of an agreement with co-clients to the contrary, each co-client may waive the privilege with respect to that co-client's own communications with the lawyer, so long as the communication relates only to the communicating and waiving client.

8

*Id.* at Comment e.

There does not appear to be any controlling authority within the Second Circuit on the issue of whether, in a joint representation by one attorney, a client may waive the attorney-client privilege regarding that person's own communication with the joint attorney. The most analogous case within this Circuit addressing joint representation and waiver involved communications made during a joint conference, which does not apply here. *See The Jordan (Bermuda) Inv. Co. v. Hunter Green Investments Ltd.*, 2006 WL 2773022, at *2 (S.D.N.Y. Sept. 27, 2006) (holding that unilateral waiver of attorney-client privilege as to joint communications cannot occur without agreement by all clients).

The Third Restatement speaks to the specific issue at hand here, and this Court should follow it. A practical reason also favors waiver—without it, the United States would not be able to obtain discovery regarding Schwartz's "reliance of counsel" defense, and Lax would be able to prevent Schwartz from obtaining testimony to prove her case.[2]

Accordingly, to ensure that the scope of waiver is proper, the United States has revised Questions 11-13 to make clear that the only permitted communications are those *solely* between Schwartz and F&V (thus excluding communications that F&V may have had with Schwartz and Lax jointly):

11.    Did Finkelstein & Virga ever communicate <u>solely</u> with Zlaty Schwartz regarding the transaction in which Chaim Lax transferred his ownership interest in LX Holdings, LLC, to the Chaim Lax Family Trust in exchange for a self-cancelling installment note ("SCIN")?

---

[2] Because the United States is not seeking discovery of communications made between F&V and Schwartz and Lax jointly, the Court need not address the perhaps more difficult question of whether the attorney-client privilege does not apply because Schwartz and Lax, as merely co-defendants, are in a "subsequent adverse proceeding between them." *See Restatement (Third) of the Law Governing Lawyers* § 75(2) (2000).

a.      If so, please describe the specific substance of the communication, the method of communication (i.e., in-person meeting, writing, or telephone), and when the communication took place.

12.      Did Finkelstein & Virga ever communicate <u>solely</u> with Zlaty Schwartz regarding Chaim Lax's federal income tax liabilities?
a.      If so, please describe the specific substance of the communication, the method of communication (i.e., in-person meeting, writing, or telephone), and when the communication took place.

13.      Did Finkelstein & Virga ever communicate <u>solely</u> with Zlaty Schwartz regarding the Estate's litigation with the IRS in U.S. Tax Court regarding Chaim Lax's federal income tax liabilities?
a.      If so, please describe the specific substance of the communication, the method of communication (i.e., in-person meeting, writing, or telephone), and when the communication took place.

## CONCLUSION

For all the reasons set forth above, the Plaintiff United States' remaining deposition questions, as amended, either do not implicate the attorney-client privilege or they seek communications for which the attorney-client privilege has been properly waived.

10

DATED:  April 26, 2021

DAVID A. HUBBERT
Acting Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Philip L. Bednar*

KARI M. LARSON
Senior Litigation Counsel, Tax Division
U.S. Department of Justice
P.O. Box 403
Washington, D.C. 20044
P:  202-616-3822
F:  202-307-2504
Kari.M.Larson@usdoj.gov

PHILIP L. BEDNAR
STEPHANIE W. CHERNOFF
ALI GADELHAK
SAMUEL P. JONES
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
P:  202-307-6415 (plb), 202-307-2251 (swc), 202-307-0854 (ag), 202-616-9085 (spj)
F:  202-514-5238 (plb, swc, ag, spj)
Philip.L.Bednar@usdoj.gov
Stephanie.W.Chernoff@usdoj.gov
Ali.Gadelhak@usdoj.gov
Samuel.P.Jones@usdoj.gov
Counsel for Plaintiff United States of America

11

**CERTIFICATE OF SERVICE**

I certify that on April 26, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF participants,

/s/ Philip L. Bednar
PHILIP L. BEDNAR
Trial Attorney, Tax Division
U.S. Department of Justice