UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,  18-CV-04061(ILG)(PK)

                      Plaintiff,

-against-

MOSHE LAX, et al.,

                      Defendants.
-------------------------------------------------------------X

## Declaration of Thomas McGowan In Opposition To Plaintiff's Motion To Compel And In Support Of Cross-Motion To Quash Subpoena

I, Thomas McGowan, under 28 U.S.C. §1746, declare as follows:

1. I am a member of Meltzer, Lippe, Goldstein & Breitstone, LLP ("MLG" or the "non-party law firm"). This declaration is respectfully submitted upon personal knowledge in opposition to Plaintiff's motion which was made <u>after</u> it deposed the architect of the estate plan at issue, Joseph Katz, to compel MLG to produce another witness to testify about that estate plan per: (a) its subpoena and (b) "this Court's March 12, 2021 Minute Order"[1]. This declaration is also submitted in support of MLG's cross-motion to quash that subpoena.

2. Plaintiff's motion is a carefully crafted, intentionally misleading narrative seeking to cause this Court to compel MLG to waste further tens of thousands of dollars in unpaid time addressing Plaintiff's questions as to which Plaintiff already knows the answers from documents in its possession and from

---

[1] Plaintiff's reference to the March 12, 2021 Minute Order is inexplicable since it does not contain any direction that MLG produce a witness for deposition (as Plaintiff itself has previously stated).

having deposed numerous people in this matter. MLG has no witness with any recollection/personal knowledge as to Plaintiff's specific questions that concern matters as to which Plaintiff has had full discovery from multiple witnesses.

**The Sham Nature Of Plaintiff's Motion As Established By <u>Its</u> Proposal of "A Declaration In Lieu Of The Deposition" To MLG**

3. Before I address some of Plaintiff's more egregious misstatements and intentional misimpressions (often by omitting relevant information that undermine Plaintiff's statements), the Court should note first and foremost the sham nature of Plaintiff's motion.

4. Aside from the fact that Plaintiff has reportedly taken anywhere from 30 to 40 or more depositions of various parties, accountants and attorneys etc. in this matter (according to an estimate provided to me by counsel for Defendant Zlaty Schartz) and thus the question arises why it needs or should be allowed to take yet further discovery, <u>Plaintiff's</u> counsel advised me on August 11, 2021 that while it was authorized to move to compel MLG's deposition, Plaintiff was "open" to <u>its own</u> suggestion that MLG "provid[e] a declaration" instead. This suggestion **made by Plaintiff** establishes that its contention in its motion that a deposition of MLG is needed is a complete and utter fabrication by counsel apparently unconcerned about any Court imposing sanctions upon Plaintiff or herself.

5. When asked what declaration Plaintiff's counsel was suggesting, **Ms. Larson responded** on August 12, 2021 that **"[i]t might be possible to avoid the deposition if Meltzer Lippe is willing to provide a declaration regarding**

certain topics. (emphasis added)" **Ms. Larson then stated that "if Meltzer Lippe has an interest in providing a declaration in lieu of the deposition, we could ask the court to hold briefing** [on a motion to compel] in abeyance". Counsel then identified the topics of Plaintiff's proposed declaration as being:

> "1. Meltzer Lippe represented Chaim Lax, and later his estate and executors in connection with IRS audits of Chaim Lax, his estate, and some of the entities he owned or had an interest in.
>
> 2. During the course of Meltzer Lippe's representation, Zlaty Schwartz did not ask Meltzer Lippe for information regarding any IRS audits of Chaim Lax, his estate, or any of the entities he owned or had an interest in.
>
> 3. Meltzer Lippe would have provided information to Zlaty Schwartz regarding any of these IRS audits had she requested it in her capacity as executor."

*See* the true copy of this string of emails between Ms. Larson and myself attached hereto as Exhibit "1" with the relevant sections noted (emphasis added). Plaintiff's counsel 'set aside' the second topic quoted above for the proposed declaration in a subsequent email sent at the end of the day on August 12, 2021 but did not set aside the third topic which asks MLG to inadmissibly speculate as to hypothetical conversations. *See Id.*

6. Plaintiff implicitly admits through this email string proposing "a declaration in lieu of the deposition" that Plaintiff not only does <u>not</u> need to depose MLG and cause it to lose tens of thousands of dollars in unbillable time, but that Plaintiff already knows the answers to the topics it identified as allegedly being important to it.

7. Plaintiff's motion begs the question as to why it burdened this Court with its motion to compel a deposition that it implicitly admitted it does not need. Plaintiff's proposal for "a declaration in lieu of the deposition" also evidences that it already knows and/or does not consider important the answers to the questions it set forth for an MLG deposition in its seven-page, single-spaced list. *See* Exhibit "B" to Larson Decl. Plaintiff's motion must be denied and MLG's cross-motion to quash granted on this ground alone.

8. After receiving the string of emails from Plaintiff's counsel annexed hereto as Exhibit "1", I contacted James Mahon, counsel for Defendant Zlaty Schwartz, and asked him what he knew about the "declaration in lieu of the deposition" proposed by Plaintiff. Ms. Schwartz' counsel told me that the <u>parties</u> had been directed to negotiate about the need for MLG's deposition and that he would be discussing this proposal with Ms. Larson. The next thing MLG received was Plaintiff's motion to compel which is replete with misstatements and intentional misimpressions.

### Plaintiff Learned Nothing From Being The Subject Of An Outstanding Sanctions Motion For Knowingly Misrepresenting Facts In This Matter

9. Now to address some of the more egregious misstatements and intentional misimpressions in Plaintiff's motion to compel the deposition it implicitly admitted it does not need. In this regard, it appears that Plaintiff learned nothing from the fact that a Rule 11 Sanctions Motion has already been filed against it for alleging facts it knew to be false in this matter. The sanctions motion

is *sub judice* and is based on Plaintiff alleging in its complaint (and again in its amended complaint) that Chaim Lax discovered he was terminally ill with cancer in November 2006 and concocted an illegal estate plan to evade his tax obligations even though Plaintiff had Chaim Lax' medical records evidencing the contrary. *See* Rule 11 Sanctions Motion against Plaintiff (along with all the exhibits thereto) filed on November 6, 2019 at Docket 143. Among other medical records that were in Plaintiff's possession before drafting its complaint that completely refutes its knowingly false allegation that Chaim Lax knew he was terminally ill in November 2006 and concocted an illegal estate plan to evade his tax obligations, were his medical records reflecting:

(i) that on April 2, 2007, the then 57 year old Chaim Lax was a "well-appearing middle-aged man in no acute distress .. [who] is well-developed, well-nourished, well hydrated, [and] without clinical pallor" who, in the absence of "subradiologic distant metastatic disease . . . would be an excellent candidate for neoadjuvant chemotherapy prior to surgical resection" (Docket 143-12)(the date he was diagnosed with treatable cancer); and

(ii) that a review of Chaim Lax' CT scan on January 24, 2008 revealed "**no evidence of disease recurrence**" after Chaim Laz had received said chemotherapy and a resection of his cancer as his doctor predicted earlier. (Docket 143-13)(emphasis added).

10. Chaim Lax did not pass until many months later in November, 2008, four (4) days short of being eighteen (18) months after signing the self-canceling installment note that was part of his estate plan. Had Chaim Lax lived but four (4) <u>days</u> longer, Plaintiff would have had an impossible burden to defeat the presumption that arises as a matter of law upon the expiration of the eighteen (18) month period that Chaim Lax was not terminally ill when the self-canceling installment note was signed.

11. Examples of Plaintiff's knowingly false misstatements and misimpressions in its instant motion include its statements in its memorandum of law that MLG "has engaged in protracted obstructionism" as to discovery; that "Meltzer Lippe claimed that it would facilitate a remote deposition of Joseph Katz . . . if the United States withdrew its subpoena"; and that "Meltzer Lippe is defying the United States' subpoena and the Court's March 12, 2021 Minute Order". *See* Docket 249-1 at pp. 2-3.

12. The actual truth, as Plaintiff is well aware, is that MLG incurred in excess of $41,000 of unpaid time and expenses producing documents and privilege logs to Plaintiff pursuant to the subpoena *duces tecum* it earlier served upon MLG. A true copy of time records reflecting that unpaid time and the value thereof based upon the hourly billing rates of the attorneys etc. involved in the production are annexed hereto as Exhibit "2". The fact that MLG did so alone evidences that

Plaintiff's claim that MLG has obstructed discovery is abjectly and knowingly false.

13. The actual truth, as Plaintiff is also well aware, is that the undersigned called Mr. Katz, a resident of Israel over which the Court has no personal jurisdiction, following the March 12, 2021 telephone conference with the Court (as MLG was requested to do) and asked him if he was willing to voluntarily appear to be deposed by Plaintiff. As I advised Plaintiff's counsel, Mr. Katz declined to do so at that time but, at the very end of our conversation, offered to be deposed as a favor to MLG if it meant that MLG would not have to waste any more time (money) on this matter by being deposed by anyone. <u>Plaintiff's</u> counsel responded that it was "great news that he [Joe Katz] has some willingness to be deposed. **Thank you for following up with him.**" A true copy of this string of emails with Plaintiff's counsel is annexed hereto as Exhibit "3" (emphasis added).

14. Plaintiff subsequently rejected Mr. Katz' proposal. Counsel should have to explain why she intentionally sought to deceive this Court by giving the misimpression that MLG refused to facilitate Mr. Katz' deposition unless Plaintiff first withdrew its subpoena of MLG. As evidenced by her writings, Plaintiff's counsel knew that MLG had attempted to facilitate that deposition before Mr. Katz made <u>his</u> last second proposal that he would voluntarily appear for deposition as a favor to MLG if it meant MLG would not also have to be deposed. *See Id.*

15. The fact that MLG sought to facilitate Mr. Katz' deposition as it was requested to do is apparently an inconvenient truth for Plaintiff since that fact does not jibe with Plaintiff's efforts to falsely accuse MLG of being a discovery obstructionist in a bad faith attempt to inflame the Court against MLG. Had Plaintiff disclosed to this Court that MLG attempted to facilitate the deposition of Mr. Katz as it was requested to do, it would have undermined the effect of Plaintiff's statement in its memorandum of law that MLG "did not facilitate the Katz deposition" (Docket 249-1 at p. 3) which, while technically true, is misleading since MLG attempted to facilitate Mr. Katz' deposition and was thanked by Plaintiff's counsel for doing so. *See* Ex. "3".

16. Plaintiff's contention that MLG is "defying": (i) its subpoena and (ii) the Court's March 12, 2021 Minute Order is also patently false. As to the latter, as noted above, there was no direction in that Minute Order directing MLG to appear for deposition – a fact noted by Judge Glasser in denying MLG's objections to it. *See* Docket 228 at p. 5. As to the former, Plaintiff's contention that MLG is "defying" its subpoena, is simply bizarre. Apparently Plaintiff considers any contention that its subpoena is improper and should be quashed as to non-party MLG as "defying" it; a position that has no support in the law and is but further untruthful hyperbole by Plaintiff in seeking to mislead this Court into directing MLG to waste another $40,000 or more in unpaid time for a witness to review documents and appear for deposition. That witness, Michael Schaffer, does not

have any recollection as the details underlying the drafting of estate planning documents over fourteen (14) years ago, pursuant to the estate plan designed by Joseph Katz, who Plaintiff has deposed. The fact that Mr. Schaffer has no recollection as to the details of the estate plan documents for Chaim Lax is not surprising given his estimates that he has prepared three hundred (300) estate plans and over one thousand (1,000) estate plan documents since then. *See* Schaffer Decl.

17. Unfortunately, these are not the only misstatements and misimpressions made by Plaintiff and its counsel in its motion papers.

18. A further example is Plaintiff's statement in its memorandum of law (Docket 249-1 at p. 3) that Mr. Katz "suggested" that Mr. Schaffer could answer the factual questions he could not – citing Mr. Katz' testimony at p. 40, ll. 2-20 attached as Exhibit "A" to Larson Decl. The cited testimony, however, was only that Mr. Katz "assume[d]" that Mr. Schaffer had prepared the specific documents he was being questioned about and not that Mr. Schaffer could answer any of the factual questions that Mr. Katz could not. *See* Exhibit "A" to Larson Decl. at p. 40, ll. 2-20.

19. The undersigned had Mr. Schaffer repeatedly review a copy of Plaintiff's seven-page, singled-spaced deposition questions annexed as Exhibit "B" to the Larson Decl. and asked him whether he could answer any of the questions therein. Mr. Schaffer repeatedly told me that, while he generally recalled preparing

some estate planning documents for Chaim Lax pursuant to an estate plan designed by Mr. Katz, he did not recall any of the details of doing so and had absolutely no knowledge as to other topics in Plaintiff's listed deposition questions such as those relating to the estate tax return which was not prepared by him or MLG as Plaintiff is well aware. *See* Schaffer Decl.

20. The Court should note that, although Plaintiff repeatedly includes questions about the estate tax return in its seven pages of deposition questions it wants this Court to compel MLG to answer (*see* Ex. "B" to Larson Decl. at pp. 1, 3, 5), Plaintiff's counsel had <u>actual</u> knowledge before preparing its list and its motion to compel that MLG did <u>not</u> prepare the estate tax return at issue but that the law firm of Finkelstein & Virga, P.C. did. In short, Plaintiff deposed both Messrs. Finkelstein & Virga and each one testified that they had prepared the estate tax return; not MLG. *See* the true copies of excerpts of said depositions annexed hereto as Exhibit "4" at p. 10, ll. 4-6, 10-15 and Exhibit "5" at p. 52, ll. 3-8; p. 60, ll. 18-21; p. 66, ll. 17-25, respectively. In sum, Plaintiff seeks to have this Court compel MLG to appear at deposition and answers questions about a document it has actual knowledge MLG did not prepare.

21. Another example of Plaintiff seeking to question MLG about post-estate planning topics that it knows MLG has no knowledge about is its numerous questions in its list relating to Defendant Zlaty Schwartz. Defendant Zlaty Schwartz, however, as Plaintiff is well aware, previously submitted a declaration to

this Court attesting to the fact that she did not speak with anyone at MLG. *See* the true copy of said declaration annexed hereto as Exhibit "6" (Docket 222).

22. Plaintiff goes so far as to misrepresent in its memorandum of law that Defendant Zlaty Schwartz "relie[d] on Meltzer Lippe's advice as the basis for her First and Fifth [affirmative] Defenses in her answer" Docket 249-1 at p. 10 citing Docket 122 (second amended answer) to justify its desire to force MLG to lose tens of thousands in unpaid time producing a witness who has no personal knowledge and no knowledge on issues that Plaintiff nevertheless demands be answered. Defendant Zlaty Schwartz' second amended answer, however, does <u>not</u> state that she relied upon Meltzer Lippe's advice as Plaintiff falsely represents to this Court. Meltzer Lippe is not even mentioned in <u>any</u> of affirmative defenses set forth in the second amended answer of Defendant Zlaty Schwartz. *See Id.* That answer only states as part of her first and fifth affirmative defenses that she relied on unnamed counsel and accountants to, *inter alia*, prepare documents such as the estate tax return (*Id.* at p. 42 and 44) which, as evidenced above, Plaintiff knows MLG did not prepare.

23. One of the more troubling aspects of Plaintiff having made its frivolous motion to compel is that its counsel admitted to the undersigned in a discussion had with her after the motion was filed that she understood that Mr. Schaffer would not have personal knowledge if forced to testify per its motion (and, thus, none of his proposed testimony will be admissible into evidence) but

stated that she 'did not care' and insisted that Mr. Schaffer go through documents identified as being withheld as privileged in the privilege logs prepared by MLG and write out the answers to each of Plaintiff's questions to be found therein. Such answers, of course, would not be binding on any party to this matter and would not be admissible into evidence against any party as the non-party hearsay such answers would constitute. *See* Federal Rule of Evidence 801, et seq.

24. Counsel then stated that privileged documents she wanted Mr. Schaffer to review to write out the answers to Plaintiff's questions had allegedly been produced to Plaintiff by another party – meaning that Plaintiff itself either knows the answers to its listed questions or has the means of determining the answers to the questions it wants to ask of MLG from documentation in Plaintiff's possession - - either of which alternative establishes that Plaintiff's motion is a sham and designed solely to harass and cause damage to MLG and waste this Court's time with frivolous motion practice.

25. Based on the foregoing, Plaintiff's motion should be denied in its entirety and the cross-motion to quash its subpoena granted in its entirety.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of September, 2021.

_____
Thomas J. McGowan