UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA,

    *Plaintiff,*

    *v.*

MOSHE LAX, individually, as an executor of the Chaim Lax Estate, as a trustee of the Chaim Lax Family Trust, and as a trustee of the GAMA Trust; ZLATY SCHWARTZ, individually, as executor of the Chaim Lax Estate, as trustee of the Chaim Lax Family Trust, and as a trustee of the GAMA Trust; SHAINDY LAX; JUDITH LAX; J.L., a minor; 299 HEWES STREET REALTY CORP; 307 HEWES STREET REALTY CORP; JBAM REALTY LLC, a/k/a JBAM REALTY 2 LLC; BEN ZION JACOBOWITZ; TOBY JACOBOWITZ; SL HOLDINGS I, LLC; SL HOLDINGS II, LLC; SL HOLDINGS III, LLC; SL HOLDINGS IV, LLC; SL HOLDINGS V, LLC; DIAMOND DYNAMICS LLC; KGK JEWELRY LLC; CONGREGATION BAIS YEHUDAH D'GANITCH; LX HOLDINGS LLC; MORRIS SCHLAGER; GITTY SCHLAGER; JOSEPH GREEN; HANNAH GREEN; HENNY GREEN; and HERSHI GREEN,

    *Defendants*.

---------------------------------------------------------------x

No. 1:18-cv-04061-ILG-PK

Dist. Judge I. Leo Glasser

Mag. Judge Peggy Kuo

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF UNITED STATES' MOTION TO COMPEL DEPOSITION TESTIMONY OF DEFENDANT MOSHE LAX**

    The Plaintiff United States of America, pursuant to Federal Rule of Civil Procedure 37(a), submits this motion to compel the deposition testimony of Defendant Moshe Lax ("Lax") over his assertion of the Fifth Amendment privilege against self-incrimination. The deponent invoked the Fifth Amendment in response to every non-introductory question (and some introductory questions, as well). However, it is unclear what basis, if any, exists for his assertion of the Fifth Amendment privilege, as there do not appear to be any relevant criminal charges

1

which could be brought against him within the applicable statute of limitations. Unless Lax can make some showing of a real and non-remote danger of incrimination, including through an in camera submission to the Court, the Court should grant the United States' motion to compel and compel Lax to submit to a second deposition and to answer the questions posed by the United States (and appropriate follow-up questions, as well).

## BACKGROUND FACTS

Plaintiff United States brought this case to reduce to judgment certain federal income tax and estate tax liabilities of the Estate of Chaim Lax, to establish fiduciary liability under 31 U.S.C. § 3713, to set aside fraudulent transfers, and to enforce federal tax liens, among other claims. Defendant Moshe Lax is a co-Executor of the Estate of Chaim Lax.

Counsel for the United States deposed Moshe Lax on May 25, 2021, using Veritext Legal Solutions' virtual deposition platform. At his deposition, Lax responded to every non-introductory question (and some introductory questions) by invoking his Fifth Amendment privilege against self-incrimination. For example, at the outset of the deposition, Moshe Lax refused to answer the question of whether he had ever been deposed before:

>     Q.   Have you ever been deposed before?
>     A.   I'm asserting my Fifth Amendment privilege to stay silent.
>     Q.   Can you repeat that one more time?
>     A.   I'm asserting my Fifth Amendment privilege to stay silent.

Declaration of Philip L Bednar ("Bednar Decl."), Ex. A (Moshe Lax Deposition), at 6:15-20.

Even the most basic introductory questions were met with the same response:

>     Q.   Did you ever attend any undergraduate institution?
>     A.   I invoke the fifth.
>     …
>     Q.   Who is Chaim Lax?
>     A.   I invoke the fifth.
>     Q.   Was he your father?
>     A.   I invoke the fifth.

2

Bednar Decl., Ex. A (Moshe Lax Deposition) at 9:15-17, 11:13-16.

Counsel for the United States then proceeded to ask his deposition questions so that a record could be established. *See generally* Bednar Decl., Ex. A (Moshe Lax Deposition).[1]

At a status conference in this case held on June 4, 2021, counsel for the United States informed the Court that Lax asserted his Fifth Amendment right against self- incrimination in response to almost all questions at his deposition. On June 7, 2021, the Court entered a minute order granting leave for the United States to file a motion to compel. The Court's minute order also directed the parties to meet and confer to limit the scope of disputed questions to be resolved in the motion to compel.

On June 24, 2021, counsel for the United States emailed Lax, requesting him to review the transcript of his deposition and provide government counsel with a list of questions asked of him during his deposition to which he invoked his Fifth Amendment right against self-incrimination but is now willing to answer. Counsel for the United States followed up with Lax again by email on July 12, 2021, and July 20, 2021. Bednar Decl., Ex. B (email correspondence).

On July 29, 2021, after not receiving a response from Lax, counsel for the United States conducted a teleconference to determine whether Lax had reviewed the transcript of his deposition and whether he now intended to answer certain questions asked of him during his deposition to which he invoked his Fifth Amendment right against self-incrimination. During the teleconference, Lax stated that he would continue to invoke his Fifth Amendment privilege

---

[1] Exhibits to the deposition are not included with this Motion, pursuant to LCR 5.1 and due to privacy concerns and open issues related to attorney-client privilege that were recently raised by Defendant Lax. The Court is invited to order production of the exhibits in camera if it wishes to review them.

against self-incrimination with respect to all of the deposition questions. On July 29, 2021, Lax confirmed by email that he continues to assert his Fifth Amendment privilege. Bednar Decl., Ex. C (email correspondence).

## ARGUMENT

"The Fifth Amendment protects a witness against giving testimony that would 'furnish a link in the chain of evidence needed to prosecute' him for a crime, provided 'the witness has reasonable cause to apprehend danger from a direct answer.'" *In re Grand Jury Subpoena of Flanagan*, 691 F.2d 116, 120 (2d Cir. 1982) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). In order to invoke the Fifth Amendment in response to a question, "[t]he danger of self-incrimination must be real, not remote or speculative." *Estate of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990). The burden of establishing the danger of self-incrimination rests on the person claiming the privilege unless the danger is readily apparent "from the implications of the question asked or the circumstances surrounding the inquiry." *Id.* That burden cannot be met by the "say-so" of the person invoking the privilege. *Hoffman*, 341 U.S. at 486. Rather, "[t]he court must look to the surrounding circumstances and context to determine whether the asserted fear is real or imaginary." *In re Grand Jury Subpoena of Flanagan*, 691 F.2d 116, 120 (2d Cir. 1982).

If the Fifth Amendment privilege is asserted, the court must determine on a question-by-question basis whether responding to the question would subject the witness to a real danger of incrimination. *Estate of Fisher*, 905 F.2d at 649. A court "should not accept a witness' blanket assertion of the Fifth Amendment privilege in response to any and all questions asked of her." *United States v. Rodriguez*, 706 F.2d 31, 37 (2d Cir. 1983).

Here, it is not clear how the Fifth Amendment could apply to any of the questions posed. It appears that Lax robotically asserted a Fifth Amendment privilege without any thought

4

whatsoever. Accordingly, Lax should first be required to show that there is a real danger of self-incrimination, and if he does, he must show on a question-by-question basis how the answer to each question implicates the danger of self-incrimination.

Initially, there is no readily apparent reason why answering any the questions posed at the deposition would give the deponent reasonable cause to apprehend the danger of self-incrimination. The United States is not aware of the factual basis for Lax's Fifth Amendment claim (nor has he offered any such basis), and it appears that any potential basis is mooted by the general five-year statute of limitations for non-capital offenses. 18 U.S.C. § 3282.[2] This case concerns federal income tax liabilities for tax years 2002-2004 and 2007 that were assessed as late as February 2013 (for year 2007), and federal estate tax liabilities relating to a decedent who passed away in 2008 and for which an additional assessment of tax was made in December 2012. The deposition questions all involve events that took place more than 5 years ago and are therefore outside of the general statute of limitations.[3] There are, of course, exceptions to the five-year limitations period, 18 U.S.C. §§ 3283-3301, but it is not readily apparent that any exceptions are applicable in this instance. The statute of limitations in a conspiracy under 18 U.S.C. § 371 begins to run from the last overt act proved. *Grunewald v. United States*, 353 U.S. 391, 396-97 (1957). The last possible triggering event that the United States can surmise would relate to the sale of real properties by Nassau Condos LLC, which took place in February 2012, more than nine years ago.

---

[2] The statute of limitations for prosecutions brought under 18 U.S.C. § 1001 for making false statements to federal officials is 5 years, under the 18 U.S.C. § 3282 catch-all provision. *United States v. Brooks*, 2008 WL 2092433, at *1 (S.D.N.Y. May 16, 2008).

[3] At the deposition, counsel for the United States did ask questions about a subsequently-formed entity that is not a subject of this lawsuit, and whether Lax has ever owned any assets located outside of the United States. Bednar Decl., Ex. A (Moshe Lax Deposition), at 237:9-241:5, 242:4-9).

Even if Lax's concern is based on his own tax returns, the statute of limitations for false tax returns is 6 years. *See* 26 U.S.C. §§ 6531(5), 7206(1). Again, the events of this case took place well beforehand. Therefore, the burden is on the deponent to explain to the Court (in camera if Lax does not want to publicly disclose his reasons) why the Fifth Amendment applies.

Regardless, even assuming there is a valid Fifth Amendment concern, the transcript demonstrates that the deponent improperly raised blanket claims of privilege as he refused to answer even the simplest questions regarding his educational backgrounds and parentage. If a valid Fifth Amendment privilege exists and the deponent wishes to maintain his Fifth Amendment privilege, he should identify each question he believes raises a valid Fifth Amendment concern before the Court is forced to go through each question and determine which he must be compelled to answer. As stated above, counsel for the United States requested Lax to review the deposition transcript and identify questions he is now willing to answer, but Lax continues to assert that he is entitled to invoke his Fifth Amendment privilege to all of the deposition questions.

Unless Lax can make some showing, including through an in camera submission, of a real and non-remote danger of incrimination, he should be compelled to appear for a deposition a second time and to answer the questions posed by the United States. And, even if he can make such a showing, he should be compelled to answer those questions which do not raise a real and non-remote danger of incrimination.[4]

---

[4] Even if the Court finds that Lax properly asserted the privilege, he may not be permitted to use the privilege as "a sword and a shield" when it suits him, and the Court may, at a future time in this case, prevent Lax from testifying or submitting other evidence "about matters previously hidden from discovery through an invocation of the privilege." *See United States. v. Certain Real Property & Premises Known as: 4003-05 5th Ave., Brooklyn, NY*, 55 F.3d 78, 85 (2d Cir. 1995).

## CONCLUSION

For all of the reasons set forth above, the Court should enter an order compelling Moshe Lax to testify in response to those deposition questions that the Court determines Lax improperly invoked the Fifth Amendment privilege, including appropriate follow-up questions by the United States.

DATED:  September 10, 2021

>                             DAVID A. HUBBERT
>                             Acting Assistant Attorney General
>                             U.S. Department of Justice, Tax Division
>
>                             */s/ Philip L. Bednar*
>
>                             KARI M. LARSON
>                             Senior Litigation Counsel, Tax Division
>                             U.S. Department of Justice
>                             P.O. Box 403
>                             Washington, D.C. 20044
>                             P:  202-616-3822
>                             F:  202-307-2504
>                             Kari.M.Larson@usdoj.gov
>
>                             PHILIP L. BEDNAR
>                             STEPHANIE W. CHERNOFF
>                             ALI GADELHAK
>                             SAMUEL P. JONES
>                             Trial Attorneys, Tax Division
>                             U.S. Department of Justice
>                             P.O. Box 55
>                             Washington, D.C.  20044
>                             P:  202-307-6415 (plb), 202-307-2251 (swc), 202-307-0854 (ag), 202-616-9085 (spj)
>                             F:  202-514-5238 (plb, swc, ag, spj)
>                             Philip.L.Bednar@usdoj.gov
>                             Stephanie.W.Chernoff@usdoj.gov
>                             Ali.Gadelhak@usdoj.gov
>                             Samuel.P.Jones@usdoj.gov
>                             Counsel for Plaintiff United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF participants.

/s/ *Philip L. Bednar*
PHILIP L. BEDNAR
Trial Attorney, Tax Division
U.S. Department of Justice