UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

LAX et al.

---

No. 18-CV-4061 (ILG-PK)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D. RECEIVED IN PRO SE OFFICE

★ DEC 0 8 2021   ★DEC 0 8 2021

BROOKLYN OFFICE

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF UNITED STATES' MOTION TO DECLARE WAIVER OF ATTORNEY-CLIENT PRIVILEGE AND THAT THE CRIME- FRAUD EXCEPTION APPLIES

## Introduction

Defendant Moshe Lax submits this memorandum of law in opposition to Plaintiff United States' Motion to declare waiver of attorney-client privilege and that the the crime fraud exception applies, dated September 17, 2021 (Dkt.258) . At a Fed. R. Civ. P. 30(b)(6) deposition of the Porzio Bromberg & Newman, PC law firm ("Porzio") the deposed was shown some privileged documents by the plaintiffs and claimed that they are bond by attorney client privilege and cannot answer the questions , the deposed did give rather lengthy answer of the general practices of an ABC. Plaintiffs filed a motion to remove the privilege from the documents presented arguing that the defendant waived the privilege and failed to claim privilege. Plaintiffs also argued to strike the privilege completely due to crime-fraud exception.

## Background Facts

### I. Attorney client privilege in this case

On June 12,2019 (Dkt. 103) Plaintiff filed a motion with the court to compel including an argument that I waived privilege thru mentioning Porzio in my original answer, on 07/03/2019 in proceeding held in front of judge Kou , "the motion as to Interrogatory 22 was denied because Defendant Moshe Lax stated that he is not asserting the advise-of-counsel defense. "

On Feb 26, 2020 defendant and plaintiff came to an agreement how to proceed with a privilege log for the privileged communications with Porzio, the agreement was to hire a third party Innovative Discovery to help me sort thru thousands of electronic emails. The agreement was negotiated with mutual respect with plaintiff Ms. Kari Larson.

This agreement followed a phone call between Ms. Larson and myself, on the call I expressed my worries that a few privilege documents might slip thru inadvertently due to the overwhelming amount of emails Ms. Larson encouraged me to go thru with agreement by stating that even If some privileged documents do get presented to them they will comply with Rule 502b and return it immediately and destroy any copy. (see exhibit #1 )

On April 17, 2021 a court hearing was held thru audio conference. Plaintiffs have complained that I haven't attended a deposition with a law firm and argued that since my communications with Attorneys are privileged I should have to attend the attorney depositions in case of objections due to the privilege which shouldn't be done after the fact. The minute order was *"The parties were heard on the status of discovery and the deposition of attorneys who provided advice to the estate or to the individual defendants. Moshe Lax agreed to and is ordered to appear at the depositions of attorneys who provided him legal advice over which he intends to assert any privilege"*

## II. The Porzio Deposition

On June 16, 2021 Warren Martin of Porzio was deposed attending was his counsel, Charles J. Stoia. This was a Fed. R. Civ. P. 30(b)(6) deposition. Mr. Stoia would object to any privileged information or document. Before any privileged emails were presented by Plaintiff Defendant Moshe Lax stated that he's relying on Mr. Stoia's objections due to privilege and there's no need for two parties to object, Mr. Stoia then spoke to this point to to which plaintiff replied "I understand " (see pages 37 and 38 of the Porzio deposition)

Mr. Warren was asked and answered about general proceedings and rules of an ABC ( assignment for benefit of creditors).

## **Arguments**

**I.** Plaintiff argues that "Defendant Moshe Lax ("Lax") has waived the attorney-client privilege in relation to certain areas of inquiry at a Fed. R. Civ. P. 30(b)(6) deposition of the Porzio Bromberg & Newman, PC law firm ("Porzio") by voluntarily disclosing certain documents to the United States in discovery"

Plaintiff also argues"Lax had ample opportunity to review the Deposition Emails for privilege."

Rule 502. Attorney-Client Privilege and Work Product; Limitations on Waiver states:

**(a)** Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver. When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

   **(1)** the waiver is intentional;

   **(2)** the disclosed and undisclosed communications or information concern the same subject matter;

**(b)** *Inadvertent Disclosure.* When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:

   **(1)** the disclosure is inadvertent;

   **(2)** the holder of the privilege or protection took reasonable steps to prevent disclosure; and

   **(3)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B).

   It responds to the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information. *This concern is especially troubling in cases involving electronic discovery. See, e.g., Hopson v. City of Baltimore,* 232 F.R.D. 228, 244 (D.Md. 2005) (*electronic discovery may encompass "millions of documents" and to insist upon "record-by-record pre-production privilege review, on pain of subject matter waiver, would impose upon parties costs of*

*production that bear no proportionality to what is at stake in the litigation")See: Explanatory Note on Evidence Rule 502*

It does not, however, require the producing party to conduct a "post-production review" in every case even if there is no reason to suspect that privileged matter has slipped through. *( Federal Rule of Evidence 502, Advisory Committee Note to Subsection )*

Defendant Lax obviously and clearly meets the criteria "the holder of the privilege or protection took reasonable steps to prevent disclosure" he reviewed carefully on his own thousands of electronically personal and attorneys e-mails , worked very closely with Interactive documents co. and Ms. Larson to have it done right and deliver in set time frames.

This is the perfect example of inadvertent disclosure and should not be a waiver of privilege

The govt's Ms. Larson verbal commitment of obeying to rule 502b should also be held to the high standard of attorney client privilege.

As soon as I was made aware- thru the motion that the govt did not adhere to the 502 rules and ignored my objection which was made thru attorney Stoia's objections of privilege on the documents and realizing that the burden is on myself to ask for its destruction I did so in email to Ms. Larson.

In short , Defendant Lax's inadvertent electronic submission of privileged communicated should not be considered as a waiver of privilege

**II.** Plaintiffs argue that the defendants failure to object to to object to a privileged document being used during a deposition plainly constitutes a waiver.

As mentioned above Lax has stated clearly and early in the deposition " in places that is not necessary for me too add because the deposed attorney is claiming privilege. I don't see the need for me to reassert that. So I'm relying on that as well ( see page 37-38 of Porzio deposition)

The plaintiff then says "I understand "after Mr Stoia backs my position.

When asked about the privileged emails, Mr Stoia clearly objects on behalf of defendants privilege ( see page 95 and 124 of Porzio deposition)

Lax has clearly not failed to object on the privileged emails , As he expressed clearly that he relies and seconds all of Mr Stoia's objection of privilege on his behalf

Defendant's agreed reliance on Attorney Stoia's objection based on defendants privilege should not be deemed as failure to object.

In conclusion, the plaintiffs aggressive position on the sacred privilege by suggesting a harsh result on a clearly inadvertent submission should be denied

III. Plaintiff argues that " The Crime-Fraud Exception Applies to the Porzio Communications"

"The ABC proceeding contained hallmarks of fraudulent activity such that a reasonable person would suspect the perpetration of a fraud. For example, on February 26, 2010, Dynamic Diamond Corp. changed its name to White Coat, Inc. via a filing with the New York Secretary of State, Division of Corporations. See Exhibit C. Less than one week after the name change, on March 4, 2010,

" The speed of the proceeding, coupled with the relatedness of the various parties involved (Ehrenfeld as Chief Restructuring Officer and Moshe Lax's wife as the sole member of the "buyer" entity) indicates a strong suspicion that a fraud was perpetrated"


**a.** In Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981)The U.S. supreme court states:
The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and *thereby promote broader public interests in the observance of law and administration of justice.*

In weighing preservation of the attorney-client privilege against the legal basis for the crime-fraud exception, the Zolin court (U.S. v. Zolin, 491 U.S. 554, 562-63 (1989) found that "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."

The southern district of NY court ruled that a there's a 3 prong requirements in the exception of attorney client privilege "the adversary needs to provide a *factual basis* for their argument that *any particular communications* or work product they seek were made with the *intent* to further a crime or fraud.

The adversary must as well establish that the withheld communications *furthered* the client's sufficiently egregious misconduct. (In re Gen. Motors LLC Ignition Switch Litig., 14-MD-2543 (JMF) (S.D.N.Y. Aug. 7, 2020)

When presented with the complaint and the plaintiffs motion of the fraud of Dynamic Diamond's ABC, any reasonable person's immediate response and first impression would clearly be "what is an ABC "?

One cannot be expected to answer with reason the question of who ate the Apple if they don't know what an Apple is.

The plaintiffs have never stated or claimed what an ABC is and what it's not , what a typical ABC looks like and the legitimacy granted by bankruptcy court and never showed a contrast between this ABC of Diamond Dynamics and the usual ABC.

in order to claim this particular ABC is atypical and is fraudulent one would have to at the very least know what a typical ABC is and how this case is atypical in order to have any reasonable opinion.

Neither have the plaintiffs ever indicated that they even have proper knowledge of the workings of an ABC .

Even more important, in the rule 30(b)(6) deposition of Porzio represented by Warren Martin on June 16, 2021, the deposed answered in length in a non privileged way how a typical abc works in regards to the questions of the name change of *white coat*, ownership by *Shaindy Lax* and the question about CRO ( chief restructuring officer ) *of Shaindy's sister's husband, Martin Ehrenfeld*
( see pages 20-28/29-32-34/35-57/58-62-66-68-69-71-85-)[1]

* Mr. Martin's articulation and testimony under oath describing in detail with obvious intimate knowledge of the typical ABC practices, procedure and rules without being challenged by plaintiffs on these facts -leads one to see clearly that it a typical ABC is in full parallel with Dynamic Diamond's ABC, - this leaves no room for a reasonable person to conclude reasonably and in good faith impression that Dynamic Diamond's ABC was any different then a typical ABC and therefore fraudulent . [2]

In plaintiffs motion footnote 2, plaintiff writes and admits " Porzio did describe generally why other businesses might change their name immediately before an ABC".

Then they add" but not specifically why Dynamic Diamonds did". This statement makes no sense at all since the whole point of the question was to establish if Dynamic's ABC was different then the typical ABC which the answer was obviously lno, it's not.

The plaintiffs have clearly failed to establish any reasonable impression that this a fraud nor have they provided any evidence that the ABC was fraudulent nor any *intent* to

---

[1] [1] This should not be confused with a reliance of counsel defense - Mr Martin is no longer my attorney and these were non privileged overall answers of the broader question of the workings of a typical ABC workings, those answers are available to all parties of the case

[2] [2] This should not be confused with a position of my own if I'm guilty or non guilty of the govt. claims of defrauding the estate whereas my only personal position is of envoking the fifth amendenment

commit fraud and have neither provided evidence that the particular communications withheld have in fact *furthered* sufficiently egregious misconduct.

In the motion the plaintiff further argues "*Yet another indicator that Moshe Lax engaged Porzio for advice related to fraudulent activity related to the ABC is Lax's assertion of the Fifth Amendment privilege against self-incrimination at his deposition in this ca*se"

The plaintiffs seem to either have the common misconception or perhaps are misleading thru the common myth that the fifth amendment is somehow used to protect only the guilty.

In Grunewald v. United States, 353 U.S. 391, 421 (1957). The court states " These totally legitimate repetitional concerns stem from the commonly-held misperception, just debunked, that only guilty people can take the Fifth. The Supreme Court has recognized this mistaken impression, and has underscored that popular perception on this point is misguided. "*Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers*. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." This misconception continues to inhibit people who would be best served by asserting their Fifth Amendment.

The Supreme Court has held on more than one occasion that "the innocent and guilty alike have a right of recourse to the Fifth Amendment." Ullmann v. United States, 350 U.S. 422, 427 n.2 (1956). In fact, the Supreme Court has "emphasized that one of the Fifth Amendment's basic functions is to protect innocent men [and women] who otherwise might be ensnared by ambiguous circumstances." Ohio v. Reiner, 532 U.S. 17, 21 (2001)

The late Chief Justice Warren offered this historical explanation for why the Fifth Amendment is designed precisely to protect the innocent from overzealous accusers: The privilege against self-incrimination is a right that was hard-earned by our forefathers. The reasons for its inclusion in the Constitution—and the necessities for its preservation —are to be found in the lessons of history. As early as 1650, remembrance of the horror of Star Chamber proceedings a decade before had firmly established the privilege in the common law of England. Transplanted to this country as part of our legal heritage, it soon made its way into various state constitutions and ultimately in 1791 into the federal Bill of Rights. The privilege, this Court has stated, "was generally regarded then, as now, as a privilege of great value, a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded, prosecutions."

The reply to motion to compel (Dkt 252) submitted by my attorney Noah Shelansky show's my pleading of the fifth is due to fear of incrimination on nothing else then what the plaintiffs wrote in the complaint. nothing in that answer factually or conceptually is inconsistent with this argument .

* The plantiff's attempted narrative to prove fraud and the crime- fraud exception falls completely short of showing that fraud or furtherance of crime and fraud happened thru seeking counsel and advice of Porzio Bromberg in regards to the ABC in bankruptcy court.

**b.**

The doctrine of judicial estoppel should bar the plaintiffs from flip flopping on the issue by an eleventh hour change of position that the crime- fraud exception should be applied by arguing that there's a prima facie showing and that they supposedly proved that advice sought and advised by Porzio was to further a fraud and therefore I should be stripped of my attorney client privilege.

Defendant Lax has held the privilege for the last few years, it was the accepted guide line throughout this discovery process by all parties.

The Supreme Court has described the doctrine of judicial estoppel in the following terms: "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him". This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

In , Intellivision v. Microsoft Corp. The UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT on Jun 11, 2012 has made clear that judicial estoppel applies to *inconsistencies in same case*, "Hoffman argues that the doctrine of judicial estoppel requires that a party's prior representation be adopted by a different court in a "prior separate proceeding," rather than by the same court in an earlier phase of the same proceeding. However, the Supreme Court has recognized that no such requirement exists. First, the Court has made clear that judicial estoppel is a flexible doctrine, without fixed

requirements. See New Hampshire, 532 U.S. at 749. Second, the Court has stated that judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" New Hampshire, 532 U.S. at 749, quoting Pegram v. Herdrick, 530 U.S. 211, 228 n."

whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors: (1) that a party's new position is "clearly inconsistent" with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." See New Hampshire, 532 U.S. at 750-51.

the plaintiffs inconsistent position in regards to my attorney client privilege encompasses all of the requirements for the doctrine.

Eight months ago, on conference call hearing on April , 17 2021 with your honor , the plantiffs asked the court to order me to attend full days depositions of attorneys and firms , something which I have not done before for obvious reasons that they are done on work days

Their argument was that since I have attorney client privilege which was clarified in beginning of the case where it was accepted by the court and all parties, I should be required to attend the the depositions live in real time in order for me to claim my privilege at same time of deposition not on later date after the fact.

The court was convinced of their argument and ordered me to attend the depositions as the plaintiffs argued.

At the time of the hearing, the plaintiffs have already had and reviewed the documents and facts they use now to make their point of crime-fraud exception, as plaintiff itself states"in the motion " they have it since a year ago" and yet their position was then strong and thereby prevailing with the court that I have to attend the deposition due to my attorney client privilige

The plaintiff should not be allowed to switch their position just because it suits them so now and thereby make a mockery of the legal judicial process.

it seems that the plaintiffs changed their position in the eleventh hour only if after my own deposition. Seemingly so they felt they did not get desired information out of it,

since I used the sacred privilege of the fifth amendenment, and are now trying to penalize me for that by shifting positions in order to be able to fish in privileged waters for information they think will somehow lend some support to their accusations .

In Conclusion , for the forgoing reasons I respectfully submit that the plaintiffs motion to declare waiver of attorney client privilege and that the crime-fraud exception applies be denied.

Respectfully,

_____
Moshe Lax
Dec. 8, 2021
moshelax@gmail.com

Exhibit #1

 **Moshe Lax**     2/26/20
To: Kari M. Larson >

## Porzio

Kari, thought over the issue with the Porzio files and I am comfortable following your advice in re: to independent company assuming we do it as last time with confidentiality letter etc. M

> On Wed, Feb 26, 2020 at 2:05 PM Moshe Lax <moshelax@gmail.com> wrote:
> Kari,
>
> When is good to call you this afternoon?
>
> On Tue, Feb 25, 2020 at 9:52 AM Larson, Kari M. (TAX) <Kari.M.Larson@usdoj.gov> wrote:
>
>> Tomorrow is good, I can do anytime noon or later. Thanks--
>>
>>
>> **From:** Moshe Lax <moshelax@gmail.com>
>> **Sent:** Tuesday, February 25, 2020 7:03 AM
>> **To:** Larson, Kari M. (TAX) <Kari.M.Larson@tax.USDOJ.gov>
>> **Subject:** Re: Question



MOTION PRO SE

MOSHE LAX

US v. LAX et al
No. 18-CV-4061 (ILG-PK)
Judge Peggy Kuo