UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                    Plaintiff,

      v.

MOSHE LAX, individually, as an executor of
the Chaim Lax Estate, as a trustee of the Chaim
Lax Family Trust, and as a trustee of the GAMA
Trust; ZLATY SCHWARTZ, individually, as
executor of the Chaim Lax Estate, as trustee of
the Chaim Lax Family Trust, and as a trustee of
the GAMA Trust; SHAINDY LAX; JUDITH
LAX; J.L., a minor; 299 HEWES STREET
REALTY CORP; 307 HEWES STREET
REALTY CORP; JBAM REALTY LLC, a/k/a
JBAM REALTY 2 LLC; BEN ZION
JACOBOWITZ; TOBY JACOBOWITZ; SL
HOLDINGS I, LLC; SL HOLDINGS II, LLC;
SL HOLDINGS III, LLC; SL HOLDINGS IV,
LLC; SL HOLDINGS V, LLC; DIAMOND
DYNAMICS LLC; KGK JEWELRY LLC;
CONGREGATION BAIS YEHUDAH
D'GANITCH; LX HOLDINGS LLC; MORRIS
SCHLAGER; GITTY SCHLAGER; JOSEPH
GREEN; HANNAH GREEN; HENNY GREEN;
and HERSHI GREEN,

                    Defendants.
------------------------------------------------------------x

MEMORANDUM AND ORDER
18-CV-4061 (ILG) (PK)

**GLASSER**, Senior United States District Judge:

        The United States commenced this civil action against the Estate of Chaim Lax ("Lax

Estate"), Judith Lax, Moshe Lax, Zlaty Schwartz ("Schwartz"), and related individuals and

entities, to recover millions of dollars that the United States says are owed on unpaid federal tax

liabilities.

1

Pending before the Court are Schwartz's Motion to Dismiss pursuant to Fed. R. Civ. P. 11 and the Court's inherent powers [ECF No. 143], and the United States' Motion for Partial Summary Judgment [ECF No. 188]. Oppositions to the United States' motion have been filed by Judith Lax and J.L. [ECF Nos. 191-94], and Schwartz [ECF Nos. 199-203]. Moshe Lax, appearing *pro se*, submitted a declaration joining in and adopting Schwartz's opposition. [ECF No. 211]. For the following reasons, the Motion to Dismiss is **DENIED** and the Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[1]

Chaim Lax was a real estate developer and diamond merchant in New York; he died in 2008 from stomach cancer. Am. Compl. [ECF No. 106] at ¶¶ 27, 35. Judith Lax was his wife. *Id.* at ¶ 29. Moshe Lax and Schwartz are his son and daughter, respectively, and are the executors of the Lax Estate. *Id.* at ¶ 37.

Between 2005 and 2012, the Internal Revenue Service ("IRS") conducted a series of examinations of the tax returns filed by Chaim and Judith Lax, and the Lax Estate. As a result of these examinations, the IRS made significant assessments against Chaim Lax and the Lax Estate for what it alleges is unpaid income tax. The balances due on these assessments, as of September 23, 2020, is $63,244,515.25; interest and penalties have accrued and will continue to do so until the balances are paid. Decl. of Andrew Barone in Supp. of Pl. United States' Mot. for Partial Summ. J., dated Nov. 5, 2020 [ECF No. 188-2], at ¶¶ 3-4. Details of the IRS's examinations and assessments are as follows.

---

[1] Unless otherwise noted, the following background is taken from the undisputed facts contained within the parties' Local Rule 56.1 Statements. [ECF Nos. 188-1, 193, 199]. Although one of the motions at issue is a motion to dismiss, because of the specific nature of the motion and the fact that it is not premised on Fed. R. Civ. P. 12, the Court is not bound by the allegations of the Amended Complaint and is not required to presume the truthfulness of those allegations. The statements included herein that are taken from the Amended Complaint are provided for background purposes only and do not serve as the basis for the Court's decisions on the pending motions.

**A.      Tax Years 2002-2004**

Between October 2005 and May 2006, the IRS began examinations of Chaim and Judith Lax's jointly filed federal income tax returns for the 2002, 2003, and 2004 tax years.  Am. Compl. at ¶¶ 30, 42.  On June 17, 2009, the IRS issued Chaim and Judith Lax Notices of Deficiency advising them that they owed income taxes for 2002, 2003, and 2004.  *Id.* at ¶ 43.

In 2010, the Lax Estate, Moshe Lax and Schwartz (in their capacities as executors of the Lax Estate), and Judith Lax entered into stipulated agreements with the IRS as to Chaim Lax's 2002, 2003, and 2004 federal income tax liabilities.  *Id.* at ¶ 48.  In accordance with the stipulated agreements, the U.S. Tax Court entered judgments in favor of the United States on the dates and in the amounts shown below:

| Tax | Date | Tax | Penalty | Total |
|------|------------|---------------|----------------|----------------|
| 2002 | 11/22/2010 | $6,277,961.00 | $1,255,592.20 | $7,533.553.20 |
| 2003 | 11/22/2010 | $7,802,857.00 | $1,560,571.40 | $9,363,428.40 |
| 2004 | 11/22/2010 | $6,052,688.00 | $1,526,510.25 | $7,579,198.25 |

Decl. of Philip L. Bednar in Supp. of Mot. for Partial Summ. J., dated Dec. 11, 2020 [ECF No. 188-3] ("Bednar's Dec. 2020 Decl."), at Ex. A (Decision, *Est. of Chaim Lax v. Comm'r of Internal Revenue*, Dkt. No. 22208-09 (T.C. Nov. 22, 2010)).  These amounts have not, to date, been paid.

**B.      Tax Year 2006**

Chaim Lax failed to file an income tax return for 2006 during his life.  Am. Compl. at ¶ 50.  On April 6, 2011, after the IRS had opened an examination of Chaim Lax's failure to file a return, Moshe Lax and Schwartz, as executors of the Lax Estate, filed a 2006 tax return on Chaim Lax's behalf.  *Id.*  On or about August 16, 2012, an individual who purportedly had a power of attorney for the Lax Estate signed an IRS Form 870, consenting to the IRS's immediate assessment of $5,216,234 in federal income tax for year 2006, plus $2,347,339 in penalties.  Decl. of Brent

Roberson in Supp. of Mot. for Partial Summ. J., dated Oct. 28, 2020 [ECF No. 188-5], at Ex. A
(Form 870). This amount has not, to date, been paid.

### C.    Tax Year 2007

In November 2009, the IRS opened an examination of Chaim and Judith Lax's jointly filed
income tax returns for the 2007 tax year. Am. Compl. at ¶ 45. The United States alleges that "[i]n
or around November 2006, Chaim was diagnosed with stomach cancer," and that in order to avoid
the taxes he owed and that his estate would owe following his death, he "undertook a series of
sham transactions designed to shield his assets from collection by the Internal Revenue Service."
*Id.* at ¶¶ 31-32. The United States further alleges that Chaim Lax's children – Moshe Lax and
Schwartz – continued these sham transactions following Chaim's death in November 2008. *Id.* at
¶¶ 32, 39, 58.

One of these allegedly sham transactions involved Chaim Lax's transfer of ownership of
LX Holdings to the Lax Family Trust. As consideration for the transfer, Moshe Lax and Schwartz
(the trustees of the Lax Family Trust) signed a Self-Cancelling Installment Note ("SCIN") whereby
the Lax Family Trust was to pay directly to Chaim Lax $40,750,000, in semiannual payments of
$3,887,360, until Chaim Lax died. At that point the note would 'self-cancel.' *Id.* at ¶¶ 64-65. The
United States alleges that this transfer was actually made for no consideration and that the Lax
Estate should still be responsible for taxes as the owner of LX Holdings. *Id.* at ¶¶ 66-71.

On February 1, 2010, the IRS issued a Notice of Deficiency to advise Chaim (now
deceased) and Judith Lax that they owed income taxes for the 2007 tax year. *Id.* at ¶ 46. In
December 2012, the U.S. Tax Court entered a judgment in favor of the United States regarding the
Lax Estate's 2007 tax liability, on the date and in the amount shown in the table below, pursuant

to a second stipulated agreement entered into by the Lax Estate, Moshe Lax (in his capacity as executor), and Judith Lax:

| Tax | Date | Tax | Penalty | Total |
|-----|------|-----|---------|-------|
| 2007 | 12/4/2012 | $ 273,309.00 | $ 54,662.00 | $ 327,971.00 |

Bednar's Dec. 2020 Decl. at Ex. B (Decision, *Est. of Chaim Lax v. Comm'r of Internal Revenue*, Dkt. No. 10587-10 (T.C. Dec. 4, 2012)). Schwartz is not listed in the caption of that proceeding. This amount has not, to date, been paid.

### D.     Estate Tax Form 706

The IRS also conducted an examination of the Lax Estate's Form 706 federal estate tax return. Am. Compl. at ¶ 54. On or about December 3, 2012, Moshe Lax and Schwartz (in their capacities as executors) signed an IRS Form 890, consenting to the IRS's immediate assessment of $4,456,718 in federal estate tax. Decl. of Terrence Fraser in Supp. of Mot. for Partial Summ. J., dated Nov. 9, 2020 [ECF No. 188-4], at Ex. A (Form 890). This amount has not, to date, been paid.

## ANALYSIS

### I.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 11 and the Court's Inherent Powers

#### A.     Arguments

Schwartz moves to dismiss the Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 11(b) and the Court's inherent powers because, she argues, "the government has made allegations that are not grounded in fact, and are obviously contradicted by indisputable facts." Def. Zlaty Schwartz's Mem. of Law in Supp. of Mot. to Dismiss [ECF No. 143-1] ("Schwartz Mot."), at 6. Specifically, she contends that the Government's case is premised on the allegation that Chaim Lax concocted an illegal estate plan following his terminal cancer diagnosis in November 2006. However, she says, the facts known to the Government show that it was not until

at least March of 2007 that Chaim Lax learned he was seriously ill. *Id.* at 6-7. Furthermore, she asserts that the alleged schemes detailed in the Amended Complaint have previously been examined by the Department of Justice and the IRS and found to be "nothing more than a well-recognized estate planning strategy." *Id.* at 7. Finally, she identifies three purported "intentional misrepresentations" in the Amended Complaint:

1. ¶ 106 of the complaint and ¶ 112 of the amended complaint both allege that the New York State Supreme Court determined that the [Dynamic Diamond Corp.] company name [was] changed to [White Coat in order to] defraud the creditors and that badges of fraud were on display. However, the decision specifically makes no finding of fact whatsoever, but takes the allegations in the complaint as true for the purposes of a motion to dismiss. Both the complaint and the amended complaint suggest that the assignment for the benefit of creditors alleged in Scheme #3 of both the pleadings was entered into to defraud the Internal Revenue Service. The government's own files establish that the assignment for the benefit of creditors came about after Dynamic Diamonds Corporation, decedent's diamond business, lost its lease and after its line of credit was pulled by Antwerp Diamond Bank.

2. In both ¶ 93 of the complaint and ¶ 99 of the amended complaint, the government alleges that the decedent's interest in Diamond Dynamics Corporation was valued at $10,280,000. Neither the complaint nor the amended complaint, however, reflect the fact that after an audit, the Internal Revenue Service accepted the alternative valuation date on May 3, 2009 of $1,490,000. The Internal Revenue Service accepted that alternative valuation date as a no change.

3. In both ¶ 121 of the complaint and 127 of the amended complaint, the Justice Department suggested to the Court that Madison Avenue Diamonds should be valued at $21,342,826. What the government elected not to tell the Court is that after the audit, the Internal Revenue Service accepted both a date of death valuation and an alternative valuation date for this asset of $1.

*Id.* at 9-10.

The United States concedes that the evidence that has been produced in discovery shows it is likely that Chaim Lax's cancer diagnosis was closer to April 2007 than November 2006, but argues that the difference is immaterial because it has no effect on the case. Pl.'s Resp. to Def.

Zlaty Schwartz's Mot. to Dismiss [ECF No. 144] ("U.S. Opp'n"), at 5. It further argues that Schwartz's characterization of the alleged schemes as "a well-recognized estate planning strategy" and the other purported misrepresentations are disputed factual questions that are not appropriately resolved by a Rule 11 motion. *Id.* at 7.

### B.    Law

A court may impose sanctions on a party pursuant to Fed. R. Civ. P. 11, as well as pursuant to its own inherent powers. Fed. R. Civ. P. 11(b) provides, in relevant part, that

> [b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). "With regard to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)); *see also Goldman v. Barrett*, 825 F. App'x 35, 37 (2d Cir. 2020) (Rule 11 requires that "no competent attorney could believe, after reasonable inquiry, [that a paper] is well-grounded in fact."). "Courts typically look for statements which rise to the level of direct falsehoods before they find that sanctions are warranted pursuant to Rule 11(b)(3)." *Bongiorno v. Baquet*, No. 20-CV-7288 (LJL), 2021 WL 4311169, at *23 (S.D.N.Y. Sept. 20, 2021) (quoting *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 412 (S.D.N.Y. 2003)). Sanctions are only appropriate if the assertion of the challenged statement was objectively unreasonable. *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014).

"[E]ven when a district court finds a violation of Rule 11, '[t]he decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion.'" *Ipcon*

*Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (quoting *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir. 2004)). A sanction of dismissal "is a 'drastic remedy' that 'should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'" *Duka v. All. Tri-State Constr., Inc.*, No. 20-CV-6648 (ER), 2021 WL 4461019, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)).

A court also has the inherent power to govern the proceedings before it and may use this inherent power to sanction a party. "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999). The showing of bad faith must be based on "clear evidence." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991). "The Supreme Court has made clear that a court's inherent power to sanction 'must be exercised with restraint and discretion.'" *Scantibodies Lab'y, Inc. v. Church & Dwight Co.*, No. 14-CV-2275 (JGK) (DF), 2016 WL 11271874, at *19 (S.D.N.Y. Nov. 4, 2016) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)), *report and recommendation adopted*, No. 14-CV-2275 (JGK), 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017).

### C.    Application

That Chaim Lax was diagnosed with stomach cancer is not in dispute. Instead, the motion seeks dismissal of the entire case because the Government alleged that the diagnosis occurred six months earlier than it actually did. The medical records submitted with the motion and the United States' own concession support the conclusion that Chaim Lax's cancer diagnosis was made in

March or April of 2007, rather than November 2006.  Decl. of James J. Mahon, dated Nov. 5, 2019 [ECF No. 143-2], at Exs. I-J; U.S. Opp'n at 5.  But the records do not support the conclusion that the Government knew this when it filed its Complaint or Amended Complaint because there is no indication of when those medical records came into the Government's possession.  Moreover, the Government's allegation is that the diagnosis was made "in or around November 2006," indicating uncertainty as to the exact date.  Am. Compl. at ¶ 31.  That uncertainty is also seen in the evidence collected from Chaim Lax's own family, who one would presume would be best positioned to know the date of diagnosis but who were unable to recall its exact date.  *See* Decl. of James J. Mahon, dated Nov. 5, 2019 [ECF No. 143-2], at Ex. O (Response to Pl.'s First Set of Interrogatories to Def. Judith Lax), Ex. R (Interview of Moses Lax).  In light of the uncertainty indicated in the Government's allegation and reflected in the evidence, the Court does not find that the allegation "in or around November 2006, Chaim was diagnosed with stomach cancer" is so "utterly lacking in support" or objectively unreasonable as to warrant a sanction pursuant to Rule 11.

The inaccuracy as to the date of the diagnosis also does not warrant the imposition of sanctions through the Court's inherent powers.  Schwartz argues that the Government's case "is not colorable because . . . the Government has always known one undisputed fact: Mrs. Schwartz's father, the decedent, did not know he had cancer at the time he instituted his estate plan."  Schwartz Mot. at 12.  But Schwartz has failed to proffer evidence establishing when the Government knew of the correct date.  Additionally, even if the diagnosis was not made until March or April of 2007, it still occurred prior to each of the allegedly illegal transactions.  U.S. Opp'n at 6; Am. Compl. at ¶¶ 59-179.  And, even if the diagnosis was removed entirely from the case, the Government's claim still rests on an entirely viable theory: that the "series of fraudulent transfers and other

artificial transactions [were] designed to hide the Lax family assets from the IRS and other creditors and make it appear as though the [Lax] Estate was insolvent." Am. Compl. at ¶ 58. Thus, there is no clear evidence that the Government's claim in this action lacked a colorable basis, let alone that the Government brought the claim for an improper purpose.

The additional "misrepresentations" about which Schwartz complains also do not serve as a basis for sanctions. Whether or not the allegedly illegal transactions were part of a legal estate planning strategy is a factual question that lies at the heart of the case. Similarly, why the Defendants themselves valued assets in the millions of dollars, as alleged in the Amended Complaint, while the IRS later accepted lower valuations, and what impact that has on liability are questions for the finder of fact. Rule 11 does not, though, require the Government to include in its Complaint every valuation that has been made for an asset. The valuations included in the Amended Complaint are factually true – Schwartz does not argue otherwise – and that is all Rule 11 requires.

The Court does find that paragraph 112 of the Amended Complaint is misleading. The Government alleges that the New York State Supreme Court "determined" that certain of the Defendants' actions were taken with a fraudulent intent. The Government omits the fact that the supreme court's decision was on a motion to dismiss, so the court was accepting allegations in the complaint as true. *Brunner v. Est. of Lax*, No. 651013/2014, 47 Misc. 3d 1206(A), at *5, 15 N.Y.S.3d 710 (N.Y. Sup. Ct. Apr. 3, 2015), *aff'd*, 137 A.D.3d 553, 27 N.Y.S.3d 148 (1st Dep't 2016). The Court finds that the Government's use of the word "determined" is a clumsy allusion to the supreme court's having accepted the facts alleged in that case as true. Although arguably misleading, the Court does not believe this circumlocution warrants the imposition of sanctions.

The Government should be held to the highest standard in ensuring that its filings are accurate. Although it may have unwittingly fallen below that standard here, its conduct does not warrant the imposition of sanctions, especially the extreme sanction of dismissal. The arguments that Schwartz raises in her motion are appropriately addressed through a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) or a summary judgment motion; her motion for sanctions appears to be an attempt to circumvent those procedural proprieties. The motion to dismiss is denied.

## II.      Motion for Partial Summary Judgment

### A.      Arguments

The United States moves for summary judgment on Count 1 of the Amended Complaint, which seeks a judgment against Moshe Lax and Schwartz, in their capacities as executors of the Lax Estate, in the amount of $61,559,044.81, plus statutory additions and interest according to law that have been accruing since April 25, 2018. This amount is composed of the sums included in the two stipulated judgments of the Tax Court (covering tax years 2002, 2003, 2004, and 2007), the amount in the Form 870 that was signed by a power of attorney for the Lax Estate (covering tax year 2006), and the amount included in the Form 890 (covering the estate tax imposed on the Lax Estate). The Government argues that an assessment for unpaid taxes, penalties, and interest was appropriately made, and, in accordance with its statutory requirements, it gave notice of the assessments and demands for payment to Chaim Lax (when he was alive) and then Moshe Lax and Schwartz as executors of the Lax Estate after Chaim Lax died. Mem. of Law in Supp. of Pl. United States' Mot. for Partial Summ. J. Regarding Count 1 [ECF No. 188], at 5-6.

Although Count 1 is only asserted against Moshe Lax and Schwartz as executors of the Lax Estate, Judith Lax and J.L., a minor, assert that they have standing to oppose the Government's

motion because they are "transferees" within the meaning of the tax code. Mem. of Law in Opp'n to Pl.'s Mot. for Partial Summ. J. [ECF No. 194] ("Lax SJ Opp'n"), at 5-7. However, they argue, they cannot properly oppose the motion because discovery is still ongoing, their discovery demands have not been complied with, and the Government has prevented them from deposing the IRS personnel whom they seek to depose. As such, they conclude, Fed. R. Civ. P. 56(d) makes the entry of summary judgment improper. *Id.* at 8-10.

Schwartz also opposes the Government's motion on two substantive grounds. First, she argues that her execution of a Form 890 does not preclude her under the principle of *res judicata* from challenging the accuracy of the IRS's assessment. Def. Zlaty Schwartz's Reply Mem. of Law in Opp'n to Pl.'s Mot. for Partial Summ. J. [ECF No. 203] ("Schwartz SJ Opp'n"), at 4-5. Second, she says that she was denied her due process rights as executor of the Lax Estate because the IRS never provided her with notice of the disputed tax assessments or demand for payment until after the Tax Court decisions were rendered. *Id.* at 5-6. With respect to the petition and subsequent judgment from the U.S. Tax Court regarding tax liabilities for years 2002, 2003, and 2004, Schwartz argues that although the caption of the petition filed in the U.S. Tax Court contains her name, the law firm that filed the petition (Meltzer Lippe) did not contact her prior to its filing and was never formally retained by her. She claims that she did not know of the case until 2012 when the IRS sent her a notice at her old address. Decl. of Zlaty Schwartz in Opp'n to Mot. for Partial Summ. J., dated Jan. 11, 2021 [ECF No. 202], at ¶¶ 3-5; Decl. of James J. Mahon, dated Jan. 11, 2021 [ECF No. 201], at ¶¶ 5, 8, and Ex. C. Schwartz submits a declaration from a forensic accountant who concludes that she could have successfully defended the SCIN that formed a substantial part of the Lax Estate, insinuating that but for the lack of notice, Schwartz could have shown in litigation that the Lax Estate did not owe the taxes that the IRS claimed. Decl. of Jay

Pines in Opp'n to Pl.'s Mot. for Partial Summ. J. [ECF No. 200], at ¶ 4. Schwartz does not make any argument with respect to the Form 870 that was executed by a power of attorney for the Lax Estate.

### B. Law

"Summary judgment is appropriate when there are 'no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Nelkenbaum v. Caliber Home Loans, Inc.*, No. 18-CV-1848, 2019 WL 3464507, at *1 (E.D.N.Y. July 31, 2019) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to demonstrate the absence of a genuine issue of material fact, and the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255.

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the non-movant who must demonstrate that a genuine issue of fact does exist. *Id.* at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the non-movant has met that requirement, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

In reviewing a motion for summary judgment, the Court's role is one of "issue-finding," not "issue-resolution." *Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 216 (E.D.N.Y.

2007). Thus, the Court does not "weigh the evidence and determine the truth of the matter" but instead only focuses on "whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### C.     Application

#### 1.     Standing

Defendant Judith Lax and J.L., a minor, assert that they have standing to oppose the Government's motion despite the fact that the motion only seeks a ruling as to Count 1 of the Amended Complaint, which is not asserted against them.  Rather, they are only named in Count 11 of the Amended Complaint, which asserts liability against them as transferees of estate assets (the proceeds of a life insurance policy) pursuant to 26 U.S.C. § 6324(a)(2).  Still, they argue, as transferees, 26 U.S.C. § 6902 provides them with the right to examine the transferor's tax records in order to challenge the transferor's tax liability.  Lax SJ Opp'n at 5-6.

It is well-established that, as a general matter, a third-party lacks standing to challenge a tax assessment made against another.  *United States v. Campbell*, 761 F.2d 1181, 1185-86 (6th Cir. 1985); *United States v. Formige*, 659 F.2d 206, 208 (D.C. Cir. 1981); *United States v. Starke*, No. 05-CV-35-ORL-31JGG, 2005 WL 3278116, at *2-3 (M.D. Fla. Sept. 26, 2005); *Middlesex Sav. Bank v. Johnson*, 777 F. Supp. 1024, 1029-30 (D. Mass. 1991).  "The fact that a party may bear the ultimate economic burden as a result of payment of a tax does not make that party the taxpayer or establish standing." *Middlesex Sav. Bank*, 777 F. Supp. at 1029.  Reasons for this rule include the limitations on the IRS's ability to share tax return information with unauthorized parties, that the obligation to file a tax return lies with the taxpayer and cannot be assumed by a third-party, that it is the taxpayer who bears the burden of proof in tax litigation, and that to allow a third-party "to raise the entire history of the tax assessment in question in a full adversary proceeding would result in a substantial impediment to a process that is designed to be swift and

14

efficient, . . . contrary to the policy interests embodied in the summary collection process." *Campbell*, 761 F.2d at 1186; *see also Starke*, 2005 WL 3278116, at *3. However, where a party is a transferee who is subject to liability pursuant to 26 U.S.C. § 6324(a)(2), at least one court has permitted the transferee to defend the asserted liability by challenging the underlying tax assessment. In that case, the court held it was appropriate to permit the transferee to challenge valuations with respect to the underlying liability of the transferor's estate because she did not have the opportunity to do so previously in the Tax Court proceeding. *United States v. Schneider*, No. A1-89-19, 1991 WL 496863, at *6 (D.N.D. Apr. 10, 1991).

Here, Judith Lax and J.L. are wrong to assert that 26 U.S.C. § 6902 permits them "to challenge the IRS's assessment of estate tax and to take discovery in support of that challenge," Lax SJ Opp'n at 6, because that statute – by its terms – applies only to proceedings in the Tax Court where the transferee is the petitioner. *See* 26 U.S.C. § 6902(b). Moreover, although it might be unfair in certain circumstances to prohibit a transferee who faces liability pursuant to 26 U.S.C. § 6324 to challenge the underlying tax assessment against the transferor, that is not the case here. As transferees, Judith Lax and J.L. are in privity with the transferors, being Chaim Lax and the Lax Estate. *United States v. Davenport*, 484 F.3d 321, 326-27 (5th Cir. 2007). Chaim Lax had the opportunity to challenge the IRS assessments during his lifetime, and the Lax Estate had the opportunity to do so after his death. Indeed, the Lax Estate *and Judith Lax* brought two petitions challenging the IRS's assessments; both were resolved by agreements of the parties. *See* Bednar's Dec. 2020 Decl. at Ex. A, Ex. B. To permit Judith Lax and J.L. to again challenge the underlying assessment in this proceeding would be to give them a second bite at the apple. Their contention that the Tax Court's decision was not a final judgment on the merits, Lax SJ Opp'n at 6-7, is

15

similarly erroneous: that the Tax Court's decision was based on an agreement of the parties (of which Judith Lax is listed as one) makes it no less final than if it were based on a trial.

Therefore, the Court finds that Judith Lax and J.L. do not have standing to oppose the Government's motion.

### 2.    Form 890

On December 3, 2012, Schwartz signed a Form 890, "consent[ing] to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any over assessment (decrease in tax and penalties) shown below, plus any interest provided by law." Decl. of Terrence Fraser in Supp. of Mot. for Partial Summ. J., dated Nov. 9, 2020 [ECF No. 188-4], at Ex. A.  Schwartz now argues "[i]t is well settled law that where a taxpayer enters into a mere administrative settlement pursuant to a Form 870, or as in this case a Form 890, that the taxpayer is not precluded under the principles of *res judicata* from later contesting the validity of the assessment." Schwartz SJ Opp'n at 4.

Initially, the Court notes that *res judicata* requires a final adjudication on the merits of an action in order to be applicable. *See Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 439 (2d Cir. 2000).  The Form 890 that Schwartz signed as an executor of the Lax Estate was not part of an action before any tribunal, nor incorporated into any final judgment. She is therefore correct that it cannot trigger *res judicata*.  She is not correct, however, that Form 890 is nothing more than an "administrative settlement" that carries with it no consequences.

In support of her position, Schwartz cites to *Lignos v. United States*, 439 F.2d 1365 (2d Cir. 1971). *Lignos* involved the execution of an IRS Form 870-AD, "Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment." That form, which is similar to the Form 890 that Schwartz signed to resolve

16

Chaim Lax's estate tax liability, acts as a non-statutory settlement agreement whereby the taxpayer makes a settlement offer to the IRS for the IRS to accept. The Second Circuit explained that "there is a hoary line of cases holding that the taxpayer's promise [in the form to not file a claim for a refund] is not binding, primarily on the ground that only a formal closing agreement or compromise could make it so." *Lignos*, 439 F.2d at 1367. This line of cases traces back to the Supreme Court's decision in *Botany Worsted Mills v. U.S.*, 278 U.S. 282 (1929), in which the Court addressed the binding nature of an informal settlement reached between a taxpayer and the Government. In that decision the Supreme Court reasoned

> that the informal settlement made in this case did not constitute a binding agreement. Section 3229 [of the then-effective Internal Revenue Code] authorizes the Commissioner of Internal Revenue to compromise tax claims before suit, with the advice and consent of the Secretary of the Treasury, and requires that an opinion of the Solicitor of Internal Revenue setting forth the compromise be filed in the Commissioner's office. Here the attempted settlement was made by subordinate officials in the Bureau of Internal Revenue. And although it may have been ratified by the Commissioner in making the additional assessment based thereon, it does not appear that it was assented to by the Secretary, or that the opinion of the Solicitor was filed in the Commissioner's office.

> We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.

*Botany Worsted*, 278 U.S. at 288-89. Because the informal agreement between the taxpayer and the Government had not been assented to by the Secretary of the Treasury, the Supreme Court concluded that it was not binding upon either party. *Id.* at 289. As the Second Circuit noted in *Lignos*, 439 F.3d at 1367, courts have continued to follow *Botany Worsted* in holding that unless the form of settlement is that which is prescribed in the statute – now codified at 26 U.S.C. §§ 7121-22 and implemented by 26 C.F.R. §§ 301.7121-1 and 301.7122-1 – the settlement is not

binding on the parties. *See, e.g., Brach v. United States*, 443 F. App'x 543, 548 (Fed. Cir. 2011); *Reynolds v. Comm'r*, 296 F.3d 607, 613 (7th Cir. 2002); *Ihnen v. United States*, 272 F.3d 577, 579 (8th Cir. 2001); *Klein v. Comm'r*, 899 F.2d 1149, 1152-53 (11th Cir. 1990); *Howe v. Comm'r of Internal Revenue*, 119 T.C.M. (CCH) 1530 (T.C. 2020), *appeal dismissed*, No. 20-72695, 2021 WL 904755 (9th Cir. Feb. 17, 2021); *Hinkle v. United States*, No. 16-CV-01048 (KG) (SCY), 2018 WL 3015004, at *2-3 (D.N.M. June 15, 2018).

However, the Supreme Court in *Botany Worsted* left unanswered the question of whether an informal settlement may give rise to an equitable estoppel argument. "In the years since *Botany Worsted,* a number of courts of appeals have determined that informal settlements such as the Form 870–AD can in fact trigger estoppel against taxpayers." *Shafmaster v. United States*, 707 F.3d 130, 136 (1st Cir. 2013) (citing *Whitney v. United States*, 826 F.2d 896, 897-98 (9th Cir. 1987)); *see also Ihnen*, 272 F.3d at 579 ("[W]here the statute of limitations has run on the IRS's ability to alter a taxpayer's liability for the years covered by an informal settlement agreement, the taxpayer may be estopped from seeking a refund of the taxes to which he or she agreed."); *Derksen v. United States*, No. 11-CV-4549, 2012 WL 5465002, at *5 (E.D. Pa. Nov. 8, 2012) ("Some courts have held that an informal agreement between the IRS and a taxpayer, even if not endorsed by the Secretary, may in some circumstances become binding on the parties by equitable estoppel when executed."); *McGraw-Hill Inc. v. United States*, No. 88-CV-7261, 1990 WL 6550, at *3-5 (S.D.N.Y. Jan. 22, 1990) (taxpayer could be equitably estopped from seeking refund for years covered by Form 870-AD). Indeed, the Second Circuit in *Lignos* agreed with the district court that the taxpayer *could* be equitably estopped from seeking a refund for the years covered by the Form 870-AD; it reversed the district court's grant of summary judgment in favor of the Government only because it found an issue of material fact in the record. *Lignos*, 439 F.3d at 1367; *see also*

*Stair v. United States*, 516 F.2d 560 (2d Cir. 1975) (holding that a taxpayer could be equitably estopped from seeking a refund after executing a Form 870-AD).  In *Stair*, the court set out the requirements for finding an estoppel as follows:

> (1) there must be a false representation or wrongful misleading silence; (2) the error must originate in a statement of fact, not in opinion or a statement of law; (3) the one claiming the benefits of estoppel must not know the true facts; and (4) that same person must be adversely affected by the acts or statements of the one against whom an estoppel is claimed.

*Stair*, 516 F.2d at 564.  In addition to the legal analysis that led the court to affirm the grant of summary judgment in favor of the Government, the Second Circuit also highlighted certain prudential considerations that are worthy of repetition:

> It requires little elaboration to demonstrate that a contrary outcome would arm the taxpayer with both a shield and a sword, and permit him to enter the lists with no chance of losing.  The Stairs, if allowed to proceed, could fare no worse than the compromise they have already succeeded in negotiating.  If victorious on the merits, they would be freed even from the obligation of sustaining their half of that bargain.  Given such a state of affairs, it would be an imprudent taxpayer indeed who did not resort to litigation even after compromise.

*Id.* at 565.

The Court has not found, and the parties have not cited, any prior decisions concerning the execution of a Form 890.  Applying the holdings of *Botany Worsted* and *Lignos*, the Court holds that Form 890 is not a closing agreement or compromise as described by 26 U.S.C. §§ 7121-22 because it is only an informal settlement mechanism that does not satisfy the requirements codified in that statute.  Therefore, despite the fact that Form 890 is clearly intended to act as a waiver of rights, and that the executor of the form "consent[s] to the immediate assessment of any deficiencies," precedent dictates that the Court hold it is not a binding agreement because it was not approved by the Secretary of the Treasury and was not accompanied by an opinion of the General Counsel of the Department of Treasury.  26 U.S.C. §§ 7121-22.  To be sure, this illogical

result belies the prudential concerns identified in *Stair* and permits the waste of judicial and government resources.

That said, the Court also holds that the execution of a Form 890 may give rise to a party being equitably estopped. The Second Circuit found that a taxpayer, by reneging on their representation in Form 870-AD that they would not file a refund claim, created grounds for equitable estoppel. *See Stair*, 516 F.2d at 565. This Court, similarly, finds that a taxpayer's subsequent challenge to the tax assessment reflected in a Form 890 is a misrepresentation that may serve as the foundation for an estoppel. Here, however, there are two reasons why Schwartz is not estopped from challenging the assessments contained within Count 1 of the Amended Complaint. First, the Government failed to explain how it is, or would be, adversely affected by Schwartz's challenge to the assessment contained within the Form 890. Indeed, the Government failed to respond to Schwartz's estoppel argument at all. Second, the Form 890 that Schwartz signed applies only to the estate tax that was assessed in December 2012. It does not address any of the assessments made for other years against Chaim Lax or the Lax Estate. Schwartz cannot be estopped from challenging those assessments based on her execution of the Form 890. *See McGraw-Hill*, 1990 WL 6550, at *5.

Therefore, the Court concludes that Schwartz is not estopped from opposing the Government's motion as a result of her execution of a Form 890.

### 3. Due Process Violations

Count 1 of the Amended Complaint seeks to impose liability on Schwartz and Moshe Lax as trustees of the Lax Estate, not as transferees of estate assets. *See* Am. Compl. at ¶ 185. Therefore, any requirements that may exist with respect to collection procedures against

transferees under 26 U.S.C. § 6901 – the basis for Schwartz's argument – are irrelevant to the Government's motion.

What is relevant are the binding Second Circuit case law and statutory provisions that Schwartz fails to identify in her opposition briefing. That authority makes it clear that the IRS need only provide notice to the last known address of the taxpayer. *See* 26 U.S.C. § 6212(b); *Tadros v. Comm'r*, 763 F.2d 89, 91 (2d Cir. 1985) ("Actual receipt of the notice is unnecessary; if it is mailed to the taxpayer's last known address it is adequate for the purposes of the statute."). "The 'last known address' to which the notice of deficiency must be sent is 'the taxpayer's last permanent address or legal residence known by the Commissioner or the last known temporary address of a definite duration to which the taxpayer has directed the commissioner to send all communications.'" *Sicari v. Comm'r*, 136 F.3d 925, 928 (2d Cir. 1998) (quoting *Tadros*, 763 F.2d at 91).

Here, Schwartz argues that notice was sent to her old address but fails to submit any evidence showing that she provided the IRS with a new address. Moreover, the record shows that notice was provided to the Lax Estate at Chaim Lax's last known address, Moshe Lax (one of the two executors), and to counsel. *See* Decl. of Andrew Barone in Supp. of Pl.'s Mot. for Partial Summ. J., dated Nov. 5, 2020 [ECF No. 188-2], at Ex. A; Decl. of Jay Pines in Opp'n to Mot. for Partial Summ. J., dated Jan. 11, 2021 [ECF No. 200], at Ex. A. These notices clearly resulted in the Lax Estate's knowledge of the tax assessments – indeed, two petitions were filed in the Tax Court to challenge four of those assessments, a Form 870 was executed to resolve a fifth, and a Form 890 was executed (by Moshe Lax and Schwartz) to resolve a sixth. The statute does not require anything more.

### 4.    The Government is entitled to partial summary judgment

Having reviewed the parties' arguments, the Court concludes that the Government is entitled to summary judgment with respect to certain – but not all – of the tax assessments levied against Chaim Lax and the Lax Estate.  First, the Government is entitled to summary judgment with respect to the stipulated amounts contained in the two Tax Court judgments, covering tax years 2002, 2003, 2004, and 2007.  The Lax Estate had notice of the IRS's assessments, challenged them in the Tax Court, and then agreed to amounts that were so ordered by the Tax Court.  Second, the Government is entitled to summary judgment with respect to the amount contained in the Form 870, covering tax year 2006.  No Defendant has raised any argument or submitted any evidence on this amount.

However, the Government is not entitled to summary judgment with respect to the amount contained within the Form 890, covering the estate tax levied against the Lax Estate.  Schwartz's execution of the Form 890 does not preclude her from challenging the amount of the assessment. She has submitted a declaration from a forensic accountant who raises a material question as to the correctness of the IRS's valuation of the Lax Estate, and thus the amount of estate tax owed. That is sufficient to prevent the entry of summary judgment on this amount.

### CONCLUSION

For the forgoing reasons, Schwartz's Motion to Dismiss [ECF No. 143] is **DENIED** and the United States' Motion for Partial Summary Judgment [ECF No. 188] is **GRANTED IN PART** and **DENIED IN PART**.  The Government is entitled to summary judgment with respect to the following amounts, as well as any additional interest amounts due since September 23, 2020:

| Tax Period Ending | Assessment Date | Assessment Type | Assessed Amount | Balance Due with interest as of 9/23/2020 |
|---|---|---|---|---|
| 12/31/2002 | 11/10/2003 | 1040 Tax | $47,239.00 | $12,263,746.03 |
| | 3/28/2011 | Add'l 1040 Tax | $6,277,961.00 | |
| | 3/28/2011 | I.R.C. § 6662 Penalty | $1,255,592.20 | |
| | 3/28/2011 | Interest | $1,293,265.90 | |
| | 3/28/2011 | Interest | $5,079.64 | |
| | 5/2/2016 | Interest | $1,508,749.60 | |
| 12/31/2003 | 12/27/2004 | 1040 Tax | $80,509.00 | $16,043,576.45 |
| | 12/27/2004 | Interest | $115.00 | |
| | 12/27/2004 | Interest | $47.24 | |
| | 1/2/2006 | Add'l 1040 Tax | $1,220.00 | |
| | 1/2/2006 | Interest | $107.00 | |
| | 3/28/2011 | Add'l 1040 Tax | $7,802,857.00 | |
| | 3/28/2011 | I.R.C. § 6662 Penalty | $1,560,571.40 | |
| | 3/28/2011 | Interest | $1,837,642.05 | |
| | 3/28/2011 | Interest | $6,446.04 | |
| | 5/2/2016 | Interest | $1,916,453.62 | |
| 12/31/2004 | 12/19/2005 | 1040 Tax | $209,645.00 | $11,887,453.16 |
| | 12/19/2005 | Estimated Tax Penalty | $1,327.26 | |
| | 9/25/2006 | Add'l 1040 Tax | $57,120.00 | |
| | 9/25/2006 | Interest | $5,570.56 | |
| | 4/2/2007 | Late Payment Penalty | $85.21 | |
| | 4/2/2007 | Interest | $3.97 | |
| | 3/28/2011 | Add'l 1040 Tax | $6,052,688.00 | |
| | 3/28/2011 | I.R.C. § 6662 Penalty | $1,210,537.60 | |
| | 3/28/2011 | Late Filing Penalty | $315,972.65 | |
| | 10/12/2015 | Interest | $1,980,733.70 | |
| 12/31/2006 | 9/5/2011 | 1040 Tax | $183,848.92 | $14,315,575.18 |
| | 9/5/2011 | Estimated Tax Penalty | $4,636.00 | |
| | 9/5/2011 | Late Filing Penalty | $6,250.26 | |
| | 9/5/2011 | Late Payment Penalty | $6,606.75 | |
| | 9/5/2011 | Interest | $7,444.53 | |
| | 9/20/2012 | Add'l 1040 Tax | $5,216,234.00 | |
| | 9/20/2012 | I.R.C. § 6662 Penalty | $1,043,246.80 | |
| | 9/20/2012 | Late Filing Penalty | $1,304,058.25 | |
| | 9/20/2012 | Interest | $2,090.539.76 | |
| 12/31/2007 | 2/19/2013 | 1040 Tax | $273,309.00 | $598,917.33 |
| | 2/19/2013 | I.R.C. § 6662 Penalty | $54,661.80 | |
| | 2/19/2013 | Interest | $67,765.92 | |
| **Total** | | | | **$55,109,268.15** |

SO ORDERED.

Dated:     Brooklyn, New York
           March 31, 2022

/s/ _____
I. Leo Glasser
Senior United States District Judge